**UNITED STATES of America,**
**Appellant,**

v.

**Winston M. SIMPKINS, Appellee.**

**No. 89–2962.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1990.

Decided Sept. 18, 1990.

---

Kathryn M. Geller, Kansas City, Mo., for appellant.

*The HONORABLE EDWARD D. RE, Chief Judge, United States Court of International Trade, sitting by designation.

1. The affidavit submitted for the search warrant mistakenly indicates that Garrison drove to

Christopher C. Harlan, Kansas City, Mo., for appellee.

Before McMILLIAN, Circuit Judge, RE, Judge,* and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

The United States appeals from an order of the District Court suppressing evidence seized pursuant to a search warrant from a residence at 3613 State Line Road, Kansas City, Missouri. We reverse.

I.

In July and August 1989, the Kansas City Police Department, specifically Detective Jerry Gallagher, conducted a six-week investigation of cocaine dealer Larence Garrison during which Gallagher made a total of four undercover purchases of crack cocaine from Garrison. On August 17, a confidential informant arranged for Gallagher to make his third purchase from Garrison. As was the custom, the informant paged Garrison on his beeper and arranged to meet at a certain location. Garrison arrived at 10:48 a.m. and sold Gallagher one-half gram of crack cocaine for fifty dollars in marked currency. During this transaction, Gallagher commented that he had not been able to reach Garrison for several days. Garrison explained that he had been out of town getting a large shipment of cocaine and that he and his associates were presently in the process of "cooking it up"—converting the cocaine into crack. After the transaction, a surveillance team attempted to follow Garrison back to his base of operations. The team trailed Garrison to a known narcotics house at 721 Jackson Street where he made a twenty-minute stop, and then followed him to the intersection of Valentine Road (also known as 38th Street) and Southwest Trafficway.[1] The police officers lost Garrison in traffic as he speeded west on Valentine.

Southwest Boulevard rather than Southwest Trafficway. Valentine Road and Southwest Boulevard do not intersect and, as the Magistrate properly noted, one familiar with the

Because of Garrison's statements regarding a large shipment of cocaine, Gallagher and the informant arranged another drug sale later that same day. The informant paged Garrison on his beeper and Garrison immediately returned the call, thus indicating to Gallagher that Garrison had ready access to a telephone. Gallagher and the informant were at a Quik Trip at 39th and Warwick (not far from where the officers previously had lost sight of Garrison), and Garrison stated that he would be there in ten minutes. Ten minutes later Garrison arrived from the west traveling on 39th Street and sold Gallagher another one-half gram of crack. During the sale, the informant told Garrison that he heard a noise coming from Garrison's truck and that he should check it out. The surveillance team then followed Garrison from the sale west on 39th Street to a residence at 3613 State Line Road. The drive took ten minutes. The officers observed Garrison park his car in the driveway, enter the residence, and come back out the garage door to work on his car.

Detective Gallagher and his team believed they had found the "safe house" where Garrison stored his cocaine and from which he ran his operation. Because the house was set back from the road and high on a hill, Gallagher concluded that police surveillance would alert the residents, so the house was not placed under surveillance. The next morning, August 18, 1989, Detective Gallagher submitted to a state court judge an affidavit in support of a warrant to search the residence at 3613 State Line Road. The items listed in the affidavit as sought included cocaine, weapons, drug paraphernalia, United States currency, and any documents related to drug trafficking. The two-page affidavit mentioned two prior drug buys from Garrison and described the two drug transactions on August 17. It also recited the fact that Garrison was first followed to within one mile of the State Line address and then successfully followed to the residence. The affidavit does not state that Garrison told Gallagher he was in possession of a

large amount of cocaine and in the process of cooking up a large batch of crack. Nor does it include the fact that the confidential informant told Gallagher he believed Garrison lived in the area of 39th and Roanoke (a few blocks from the State Line address) or that Gallagher had previously surveilled two addresses corresponding to the registrations of Garrison's vehicles and determined that Garrison did not reside at either of these addresses. The state court judge issued a warrant to search the residence at 3613 State Line Road and five days later, on August 23, the warrant was executed. The evidence seized by police included over four kilograms of cocaine, more than $64,-000 (including marked currency used in an undercover purchase of crack cocaine), various weapons and ammunition, and miscellaneous documents related to drug trafficking. The police arrested Winston M. Simpkins, who was at the residence at the time of the search, and a few weeks later a federal grand jury returned an indictment charging him with knowingly and intentionally possessing cocaine base in an amount of fifty grams or more, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (1988), and with using firearms during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (1988).

Simpkins moved to suppress the evidence seized in the August 23 search on the grounds that the affidavit did not set forth probable cause to believe that the residence at the State Line Road address contained drug trafficking material. The Magistrate held an evidentiary hearing on this motion and filed his Report and Recommendation that Simpkins's motion be granted. The District Court adopted the Magistrate's Report and Recommendation and ordered that the evidence be suppressed. The United States appeals from this order.

## II.

■ The government first challenges as clearly erroneous the District Court's finding that the affidavit is insufficient to establish probable cause. In the alternative, the government asserts that the good faith

streets of Kansas City would not be misled by this error.

exception to the exclusionary rule should apply and make suppression of the seized evidence unwarranted.

"The sufficiency of a search warrant is ... determined on the basis of the information before the issuing judicial officer." *United States v. Reivich,* 793 F.2d 957, 959 (8th Cir.1986). We review a district court's finding that an affidavit failed to establish probable cause under the clearly erroneous standard. *United States v. Martin,* 833 F.2d 752, 755 (8th Cir.1987), *cert. denied,* —— U.S. ——, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990). Although we believe that following a known drug dealer to a particular residence may establish a fair probability that the residence contains drug trafficking materials, we cannot say that the District Court's decision was clearly erroneous. The affidavit presented to the state judge omitted several key details of the investigation and Detective Gallagher testified at the suppression hearing that he did not orally inform the issuing judge of anything beyond the information in the affidavit. Transcript of Evidentiary Hearing at 23. The judge was not aware of Gallagher's belief that Garrison was presently processing a large amount of cocaine into crack nor the detective's understanding that Garrison did not reside at either address to which he was traced through his motor vehicle registrations. Accordingly, we find no fault with the District Court's determination that the warrant was invalid.

Our conclusion in that regard, however, does not end our inquiry. The government argues that, because the police officers executed the warrant in a good faith belief in its validity, the exclusionary rule does not require that the evidence be suppressed.

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court announced the good faith exception to the exclusionary rule. The Court recognized that the purpose of the exclusionary rule—deterring police misconduct—generally is not served by suppressing evidence seized by an officer in reliance on a facially valid search warrant.

In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."

468 U.S. at 921, 104 S.Ct. at 3419 (quoting *Stone v. Powell,* 428 U.S. 465, 498, 96 S.Ct. 3037, 3054, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring)). So long as an officer's reliance on the issuing judge's determination of probable cause is "objectively reasonable," evidence seized pursuant to an ultimately invalid search warrant need not be suppressed at trial. 468 U.S. at 922, 104 S.Ct. at 3420. The Court outlined four situations in which an officer's reliance on a warrant would be unreasonable: (1) the affiant included information in the affidavit that he "knew was false or would have known was false except for his reckless disregard of the truth" and that information misled the issuing judicial officer; (2) the issuing judge abandoned his neutral judicial role; (3) the warrant was based on an affidavit with so few indicia of probable cause that an official belief in its validity would be unreasonable; and (4) the warrant itself was so "facially deficient ... that the executing officers" could not reasonably rely on its validity. 468 U.S. at 923, 104 S.Ct. at 3421. In the instant case, the District Court adopted the Magistrate's conclusion "that the affidavit is so lacking in indicia of probable cause that no reasonably well-trained officer should have relied upon it." Report and Recommendation at 11. We disagree with that conclusion.

▮ When assessing the objective good faith of police officers executing a warrant, we "must look to the totality of the circumstances," including any information known to the officers but not presented to the issuing judge. *Martin,* 833 F.2d at 756. In the absence of any allegations that the affiant gave false information to, or of misconduct on the part of, the issuing judge, our inquiry is limited to whether "an objectively reasonable officer could have believed the seizure valid." *United States v. White,* 890 F.2d 1413, 1419 (8th Cir. 1989), *petition for cert. filed,* No. 89–6677 (U.S. Feb. 13, 1990). As this is a mixed

question of law and fact, our review of this determination is *de novo*. *See Martin*, 833 F.2d at 755–56. Considering the totality of the circumstances in the instant case, we conclude that the officers' reliance on the search warrant issued on the basis of Gallagher's affidavit was objectively reasonable.

The affidavit indicated that Garrison had sold crack cocaine to an undercover officer on four occasions. The officers had information directly from Garrison himself that he was in possession of a large amount of cocaine. The implication of Garrison's remarks during the first drug sale on August 17 was that he was busy at home converting the cocaine into crack. When the informant paged Garrison for the second sale, he had immediate access to a phone and traveled ten minutes to get to the location of the sale, arriving from the precise direction of the State Line address. When, after the sale, Garrison traveled ten minutes directly to the State Line address, it was not unreasonable for the officers, assisted by their training and their experience in crack cocaine cases, to infer that Garrison had returned to his base of operations to continue processing cocaine into crack. The Magistrate's conjecture that "[f]or all the police knew, Garrison might have gone to 3613 State Line to visit an uncle who had no knowledge of Garrison's narcotics trafficking activities," Report and Recommendation at 12, is misplaced. The fact that an innocent purpose might explain Garrison's conduct does not preclude the officers' good faith belief that evidence of drug trafficking would be found at the residence nor negate the officers' objectively reasonable belief that the warrant they obtained was valid. *See United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985).

Here, a state court judge determined that the affidavit established probable cause to believe that the residence at 3613 State Line Road contained drug trafficking materials. A Magistrate found to the contrary and the District Court agreed. "When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance on that affidavit must, therefore, be reasonable." *Martin*,

833 F.2d at 756. The exclusion of seized evidence is an extreme remedy designed to deter improper police conduct. In this case, there is no showing of any improper police conduct. If a mistake was made, it was made by the issuing state court judge. "Penalizing the officer for the [issuing judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Leon*, 468 U.S. at 921, 104 S.Ct. at 3419. We do not believe that the affidavit here was so clearly insufficient as to preclude the officers from relying in good faith on the search warrant or to justify the suppression of the evidence seized.

■ Nor are we persuaded by the Magistrate's conclusion that the passage of five days between the issuance of the warrant and its execution negated the officers' good faith belief in the warrant's continued validity. At the hearing before the Magistrate, Detective Samuel Burroughs explained that the warrant was issued on a Friday afternoon after a large portion of the officers in his unit already had left for a weekend retreat. On Monday and Tuesday of the following week, several officers were scheduled to participate in training exercises that could not easily be rescheduled. Accordingly, it was not until Wednesday that the police department had the necessary personnel to execute the warrant. Transcript of Evidentiary Hearing at 35–36. The Magistrate found that because of the mobility of narcotics traffickers, "no police officer could reasonably believe that, if there were cocaine at the residence on Thursday, there would still be cocaine there on a Wednesday six days later." The court further stated that, because the Kansas City Police Department has approximately 1,000 officers, "it is quite evident that personnel could have been made available to serve the warrant promptly after it was issued." Report and Recommendation at 13. We are uncomfortable with both of these statements.

Generally, search warrants must be executed within ten days of being issued. *See* Mo.Rev.Stat. § 542.276.8 (Supp.1989); Fed. R.Crim.P. 41(c)(1). This Court has stated

that search warrants are to be executed promptly.

Timeliness of execution should not be determined by means of a mechanical test with regard to the number of days from issuance, nor whether any cause for the delay was per se reasonable or unreasonable. Rather it should be functionally measured in terms of *whether probable cause still existed at the time the warrant was executed.*

*United States v. Shegog,* 787 F.2d 420, 422 (8th Cir.1986) (quoting *United States v. Bedford,* 519 F.2d 650, 655 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976)) (emphasis in original). The Magistrate's statements regarding the size of the Kansas City Police Department are therefore irrelevant. The federal courts have no jurisdiction to review the reasonableness of personnel allocations within a police department. In evaluating the impact of the five-day delay on the officers' good faith belief in the warrant's continuing efficacy, our review is limited to determining whether the officers were reasonable in their belief that probable cause still existed at the time the warrant was executed. We conclude that they were.

In determining whether probable cause dissipated over time, a court must "evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought." *United States v. Foster,* 711 F.2d 871, 878 (9th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984). It is not unreasonable for officers to conclude that large-scale drug operations may remain at the same location for a period of time. *Shegog,* 787 F.2d at 422 (eight-day delay between issuance of warrant and its execution held acceptable); *Foster,* 711 F.2d at 878 (three months between drug sale and search of residence did not defeat probable cause). The officers here had good reason to believe that Garrison and his associates were engaged in an on-going criminal enterprise. Gallagher made several purchases from Garrison over a six-week period and Garrison himself stated that he was involved in large-scale purchasing and production. The officers purposely did not surveil the State Line address over the weekend so as not to alert the residents. In short, the officers had no reason to believe that the situation at 3613 State Line Road had changed in the intervening five days between Friday and Wednesday. We therefore cannot say that the five-day delay in the instant case negated the officers' good faith belief that probable cause existed.

### III.

Because we conclude that the officers who searched the residence at 3613 State Line Road were objectively reasonable in their reliance on the validity of the search warrant issued by the state court judge, the order of the District Court suppressing the evidence seized in the search is reversed and the case is remanded for further proceedings consistent with this opinion.