UNITED STATES of America, Appellee,

v.

Toney Anthony GLADNEY, Appellant.

UNITED STATES of America, Appellee,

v.

Chester Earl SMITH, Appellant.

Nos. 94–2890, 94–2891.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1994.

Decided Feb. 21, 1995.

Rehearing Denied April 6, 1995.

Robert Richman, Minneapolis, MN, argued, for appellant Gladney.

Corey J. Ayling, Minneapolis, MN, argued for appellant Smith.

Jeffrey S. Paulsen, Minneapolis, MN, argued for appellee.

Before RICHARD S. ARNOLD, Chief Judge, FAGG, Circuit Judge, and WILSON,[1] District Judge.

WILSON, District Judge.

On May 9, 1994, Toney Anthony Gladney entered a conditional plea of guilty to possession of 917 grams of cocaine with intent to distribute in violation of 21 U.S.C. 841(a)(1); Mr. Gladney expressly reserved his right to appeal the denial of his motion to suppress evidence. Chester Earl Smith made a similar conditional plea of guilty to a charge of maintaining a stash house for storing and distributing controlled substances in violation of 21 U.S.C. 856(a)(2). Gladney appeals the District Court's[2] 60–month sentence, and Smith appeals his 15–month sentence. For the reasons discussed below, we affirm.

## BACKGROUND

On January 24, 1994, Officer Darcy Klund of the Minneapolis Police Department received information from an informant that (s)he had been inside an apartment at 2121 Minnehaha Avenue South, # 1001 that day and had observed a large quantity of cocaine. The informant had been supplying reliable information to Mr. Klund for two years. Klund received the information from the informant by telephone and immediately relayed it to another officer, David Hayhoe, as the conversation was proceeding. Officer Hayhoe typed the warrant affidavit as Klund was speaking. The relevant parts of Officer Hayhoe's supporting affidavit stated the following:

> Officers of the Minneapolis Narcotics Unit are currently conducting an investigation involving two black male parties by the names of Reginald Montgomery and Eric Hewitt, who are trafficking large amounts of cocaine in the City of Minneapolis. On 1–10–94, officers, including your affiant, conducted a search warrant at 790 Blair Avenue, St. Paul, in which approximately $25,000 ... and drug notes were seized. The above two parties were arrested and subsequently released. On the person of [Reginald] Montgomery at the time of arrest was found a phone number, 341–2936, which Montgomery stated was the phone number of his Uncle Boo. Within the past 72 hours, your affiant received information from a Confidential Reliable Informant (CRI) that a large quantity of suspected cocaine is being stored at the residence of Uncle Boo, whose real name is Chester Montgomery. The CRI states that Montgomery's phone number is 341–2936. The CRI states that Montgomery lives on 2121 Minnehaha Avenue South, Apt. 1001 ... Your affiant did an administrative subpoena on the above listed phone number which lists to Chester Smith, 2121 Minnehaha Avenue South, # 1001 ...

The affidavit also stated that the informant had previously provided reliable information to the Minneapolis Narcotics Division, "including your affiant," and this information had led to seizures of large amounts of crack and cocaine, currency and property.

A state court judge approved the warrant based upon the information in the warrant affidavit. The police immediately executed the warrant. The officers found roughly 917 grams of cocaine and drug paraphernalia in the apartment. Defendants Gladney and Smith were in the apartment during the search and were arrested. Mr. Gladney also

---

1. The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas, sitting by designation.

2. The Honorable Robert G. Renner, Senior District Judge for the District of Minnesota, Fourth Division.

had in his possession telephone numbers and notes relating to Montgomery and Hewitt. Defendants moved to suppress the evidence obtained as a result of the warrant. The motion to suppress was based upon the arguments that, first, the warrant on its face was not sufficient to establish probable cause, and second, that the warrant affidavit was tainted by intentional or reckless misrepresentations and omissions of facts critical to the probable cause determination. Magistrate Judge J. Earl Cudd ruled that the affidavit was not supported by probable cause, but found that the officers had relied in good faith on a facially valid search warrant, citing their knowledge that the informant had actually seen the drugs in the apartment and had provided information leading to arrests and convictions in the past. Upon *de novo* review of the Magistrate Judge's report and recommendation, Senior District Judge Robert Renner ruled that the search warrant affidavit did establish probable cause. Judge Renner also concluded that the affidavit's incorrect implication that Reginald Montgomery was arrested at 790 Blair, rather than in a vehicle several hours later (as in fact he was), did not undermine the existence of probable cause. Since he held that the affidavit did establish probable cause, Judge Renner did not reach the question of whether the officers relied in good faith upon a facially valid warrant. For the reasons discussed below, we affirm Judge Renner's ruling.

## PROBABLE CAUSE FOR THE SEARCH WARRANT

Affidavits for search warrants are reviewed using the "totality of circumstances" analysis. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The task of the issuing magistrate is to make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... concluding that probable cause existed." *Id.* When the magistrate relied solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir.1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983). Affidavits must be read in "a common-sense and realistic fashion," *United States v. Cadwell*, 864 F.2d 71, 74 (8th Cir.1988), citing *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). "Deference is accorded an issuing magistrate's probable cause determination ..." *United States v. Brown*, 584 F.2d 252, 256 (8th Cir. 1978), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979). Probable cause exists when "there are sufficient facts to justify the belief by a prudent person that contraband or evidence of a crime will be found in the place to be searched." *United States v. Bieri*, 21 F.3d 811, 815 (8th Cir. 1994). A district court's denial of a motion to suppress must be affirmed unless it is "unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." *Id.* at 814.

■ In this case, the government acknowledged that the search warrant affidavit should have been more carefully drafted. However, this Court finds that Judge Renner was correct in ruling that the affidavit established probable cause. The District Court emphasized the statements in the affidavit relating to the execution of the search warrant at 790 Blair Avenue and to the administrative subpoena Mr. Hayhoe obtained for the telephone number belonging to "Uncle Boo." When Reginald Montgomery was arrested on January 10, 1994, he had on his person a telephone number, 341–2936; the subpoena revealed that the telephone number belonged to "Uncle Boo," who is Chester Smith, then of 2121 Minnehaha, # 1001. The affidavit stated that the confidential informant (CI) had indicated to the police that a large quantity of cocaine could be found in "Uncle Boo's" apartment, which was identified in the affidavit as 2121 Minnehaha, # 1001. Judge Renner also cited the affidavit's description of the proven record of the

informant, who had "provided information to the Minneapolis Narcotics Division before ... and [the information] resulted in the seizures of large amounts of controlled substances, money and other property."

■ Appellants challenge the informant's reliability and the basis of the informant's knowledge. Reading the affidavit in its entirety, it clearly contained both statements from the informant and other information (noted above) providing a substantial basis for finding a "fair probability" that contraband or evidence of illegal activity could be found at the residence stated in the search warrant. When an informant's information is at least partly corroborated, as it was in the instant case, "attacks upon credibility and reliability are not crucial to the finding of probable cause." *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir.1992). In any event, the affidavit also set forth the informant's proven reliability as established by the past seizures of large amounts of controlled substances based upon the CI's information. This Court finds no error in the District Court's determination that probable cause existed.

### ISSUES OF OMISSIONS AND MISREPRESENTATIONS

■ Appellants contend that even if this Court concludes that the warrant affidavit was facially sufficient, it is nonetheless subject to a challenge that it included deliberate or reckless misrepresentations in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In order to prevail on a challenge to a warrant affidavit under *Franks*, a defendant must show:

1) that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to establish probable cause. The same analysis applies to omissions of fact. The defendant must show: 1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.

*United States v. Humphreys, supra,* at 258 n. 2, citing *United States v. Lueth,* 807 F.2d 719, 726 (8th Cir.1986); *United States v. Reivich,* 793 F.2d 957, 960 (8th Cir. 1986).

■ In the instant case, defendants allege that the affidavit falsely represented that notes seized at 790 Blair were "drug notes." The seized document listed nicknames such as "Smoke," "Big Dee," "Bang Bang" and "Chubbs," and their telephone numbers; it also had jottings and doodling on it. Defendants' interpretation of these notes as merely telephone numbers is possible, but it is also just as plausible that the list of names and telephone numbers was connected to drug trafficking. Since the drug notes are ambiguous and the affiant's interpretation of them was plausible, the District Court did not err in concluding that the affidavit's description of the seized document as "drug notes" was not a deliberate falsehood or misrepresentation made with reckless disregard for the truth under *Franks, supra.*

■ Appellants further assert that the affiant falsely stated that he "received information" from the informant. Actually, Officer Klund spoke to the informant, who relayed this information to Officer Hayhoe, who sat at a typewriter in the next cubicle preparing the affidavit. The affiant did not claim that he spoke directly to the informant. Mr. Klund was on the telephone with the CI while the affiant was typing the affidavit, so that the relay of information was virtually instantaneous. This situation differs from cases in which informant information was relayed to the affiant at a later date through an unreliable intermediary. Defendants failed to establish that the affiant acted with anything more than negligence in relating how he received the information from the informant, and accordingly this does not provide a basis for a *Franks* violation.

■ A more serious problem with the affidavit concerns the failure to state that Mr. Montgomery and Mr. Hewitt were not arrested during the initial search at 790 Blair Avenue in St. Paul, but were arrested several hours later in Minneapolis. The failure to include information and a reckless disregard

for its consequences may be inferred from the fact that the information was omitted, although "the defendant must show that the omitted material would be 'clearly critical' to the finding of possible cause." *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993) (quoting *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir.1986)). This Court finds that the affidavit was improperly drafted in the failure to indicate where Montgomery and Hewitt were arrested, and this created a false connection between the money and drug notes allegedly found at 790 Blair and "Uncle Boo." The affidavit created an erroneous inference that Montgomery was in the 790 Blair residence at the time of his arrest. That inference is significant for two reasons: first, presence at the Blair residence would link Montgomery to the cash and "drug notes" found there, and it would support the statement in the affidavit that Montgomery was under investigation for drug trafficking. Evidence that tended to confirm Montgomery's involvement in drug trafficking would support the inference that the association between "Uncle Boo" and Montgomery was related to trafficking. The affidavit then states the remaining steps connecting Montgomery to "Uncle Boo," and thus the incident at 790 Blair provides important evidence upon which an issuing judge could find a "fair probability" that drugs or evidence of trafficking would be found at "Uncle Boo's" residence, 2121 Minnehaha. For these reasons, the District Court correctly found that the omitted material "would be clearly critical" to the issuing judge. *Jacobs, supra.*

■ Having demonstrated that relevant information was recklessly omitted from the warrant application, appellants must further show that the affidavit, if supplemented with the omitted information, would not be sufficient to support a finding of probable cause. *Jacobs,* at 1235; *Reivich, supra,* at 961. If the information regarding Montgomery's interest were included, that undermines the relevance of the information in the affidavit regarding 790 Blair. Without that information, the issuing magistrate would be left with the following information: (1) Montgomery was being investigated for drug trafficking; (2) Montgomery was arrested on January 10, 1994, and he had on his person a

telephone number, 341–2936, which he said was "Uncle Boo's" number; (3) an informant stated that a large quantity of cocaine was in the apartment of "Uncle Boo," whose number was 341–2936 and address was 2121 Minnehaha, # 1001, Minneapolis; (4) an administrative subpoena indicated that the number, 341–2936, was listed to Chester Smith at the Minnehaha address; (5) the informant provided information to the Minneapolis Narcotics Division that had proven reliable and led to seizures of large amounts of cocaine, currency and property.

■ The Court concludes that even if the affidavit were modified to include only the five points summarized above, it still provides a sufficient basis for issuing a warrant. In attacking the informant's reliability, appellants contend that the affiant did not state that the informant had made two allegedly incorrect predictions regarding the location of drugs. Further, defendants contend that the affiant failed to tell the judge that the informant had been charged with a drug offense and is cooperating to obtain leniency. Regarding the first attack on the informant's reliability, the Court finds that appellants are incorrect in their contention that the CI had erred in his two most recent efforts to provide information about drug trafficking; one of these two instances involved the warrant issued for the Blair residence, in which over $23,000 in cash and the "drug notes" were found. Since that warrant uncovered clear indicia of drug trafficking in the large amount of cash and the notes, the informant's information regarding 790 Blair cannot be described as inaccurate. It is well-settled law that the "statements of a reliable informant can provide, by themselves, a sufficient basis for the issuance of a warrant." *United States v. Pressley*, 978 F.2d 1026, 1027 (8th Cir.1992) (citing *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *see United States v. Anderson*, 933 F.2d 612, 615 n. 3 (8th Cir.1991)). As the United States Supreme Court ruled in *Gates, supra*, "We agree ... that an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be un-

derstood as entirely separate and independent requirements to be rigidly exacted in every case ..." *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328. Basis of knowledge and reliability should be understood as related issues that "may usefully illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* The Supreme Court further ruled that if an informant is known for the unusual reliability of his predictions "of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip." *Id.* at 233, 103 S.Ct. at 2329. Applying *Gates* to the case at bar, the Court takes note of the reality that the informant had provided information for the past two years to the Minneapolis Narcotics Unit that led to seizures of cocaine base, cocaine, currency and property. Viewed in this context, the affiant accurately stated that the informant had established a history of reliability. The lack of specific details regarding basis of knowledge is not fatal in the probable cause analysis. Moreover, in the telephone number and the name of the occupant at the Minnehaha address, the administrative subpoena substantially corroborated the facts supplied by the informant. Thus, this Court finds that the affidavit, even considered in modified form, provides a substantial basis for finding a fair probability that evidence of criminal activity would be found in the residence to be searched.

█ Appellants also challenge the affiant's omission of the fact that there were pending drug charges against the informant, who was providing information in the hopes of receiving leniency. This Court has previously ruled that "as a matter of good practice the affiant should have informed the magistrate" of the benefits an informant hoped to receive for his cooperation. *United States v. Ellison,* 793 F.2d 942, 947 (8th Cir.1986). However, the *Ellison* Court also stated that despite this omission, "we do not believe that in this case the omission of these facts undermined the informants' information or cast doubt on the existence of probable cause

under *Illinois v. Gates." Ellison,* at 947. The omission of the fact that the informant is charged with a crime and is cooperating to gain leniency is not a misrepresentation and is not "clearly critical" to the issuing judge. *United States v. Wold,* 979 F.2d 632, 634 (8th Cir.1992); *see also United States v. Flagg,* 919 F.2d 499, 500–01 (8th Cir.1990); *Reivich, supra,* at 962–63. In *Wold,* the Court found that omission of the facts that the informant had been a drug dealer for years, was cooperating to receive leniency, and was being paid by the police were not considered material misrepresentations. *Wold,* at 634–635. The Court ruled that "Judicial officers issuing warrants are aware of deals made with informants who themselves are facing charges. Therefore, failure to inform the issuing officer of a deal is not fatal to the validity of the warrant." *Id.*

Appellant Gladney cites *United States v. Gibson,* 928 F.2d 250 (8th Cir.1991) for the proposition that a tip from an informant that is only partially corroborated by police is inadequate to establish probable cause. Appellant's contention is incorrect, for *Gibson* is clearly distinguishable from the instant case: *Gibson* involved information provided by an anonymous tipster, the police had no information about the reliability of the tipster, and "there was little meaningful corroboration of the tipster's information." *Gibson,* at 253. In contrast, the informant in this case had a proven record, and the administrative subpoena corroborated the facts provided about the informant concerning the telephone number and the name of its occupant.

## CONCLUSION

The search warrant affidavit established probable cause, and therefore the District Court's denial of the defendants' motion to suppress is affirmed. The convictions of Toney Anthony Gladney and Chester Earl Smith, based on their conditional guilty pleas, are hereby affirmed.