No. 95-3067

United States of America,      *

     Plaintiff - Appellee,      *   Appeal from the United States
                       *   District Court for the Southern
        v.               *   District of Iowa.
                       *

Jack Dean Johnson,      *

     Defendant - Appellant.      *
                       *

Submitted:   January 9, 1996

Filed:   March 1, 1996

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN, Circuit Judge, and JONES,[*]
     Senior District Judge.

JONES, Senior District Judge.

Jack Dean Johnson entered a conditional plea of guilty to a charge of manufacturing marijuana, and has been sentenced thereon. He sought to suppress evidence seized in the search of his residence pursuant to a search warrant by alleging that his Fourth Amendment rights were violated by the search. He appeals the district court[1] ruling that the evidence should not be suppressed. We affirm.

## I.

On February 14, 1994 Detective Konopa of the Ames Police Department received an anonymous phone call. The call came in at

---

[*]The Honorable John B. Jones, Senior United States District Judge for the District of South Dakota, sitting by designation.

[1] The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

approximately 12:40 pm.  The caller was a male who stated that approximately twenty minutes earlier he had observed a tall, skinny white male deliver three-and-a-half pounds of marijuana to the Jack Johnson residence.  The caller stated the marijuana was in a paper bag wrapped in three one-pound bundles and one half-pound bundle. The caller stated that after the delivery was made, Johnson and the deliverer went out to the garage of Johnson's home.  The caller also stated that Johnson lived with his wife Vicki in a house across from the DOT (Iowa Department of Transportation).  When Detective Konopa questioned the caller about the source of his knowledge, the caller replied he had been inside Johnson's house and had seen the marijuana.  The caller went on further, stating that Johnson left some of the marijuana in the refrigerator, and possibly some in a filing cabinet.  The caller also relayed unrelated information concerning a stolen jeep.

After the call was completed, Detective Konopa verified Johnson's address with the city utility files.  Detective Konopa also discovered that Johnson had been arrested in 1988 for marijuana possession.  Detective Konopa then relayed this information to Ames Detective James Robinson.  Detective Robinson also verified that the address given by the caller was Johnson's with the city utility office.  Detective Robinson also verified that Johnson's wife name was Vicki.  Detective Robinson directed an officer to drive by the Johnson house to verify it was across the street from the DOT and had a garage attached to it.

Detective Robinson shared the information with an Assistant County Attorney who advised him to prepare an application for a search warrant.  Detective Robinson presented Judge Steven Van Marel an affidavit for a search warrant of Johnson's address.  The affidavit detailed the conversation with the anonymous caller and the steps taken to corroborate the caller's information plus

-2-

Johnson's criminal history.  Judge Van Marel issued a search warrant and it was executed that afternoon.  The search of

Johnson's home resulted in the discovery of plastic bags of marijuana in Johnson's refrigerator and his file cabinet and also uncovered 373 marijuana plants and growing equipment.

On May 3, 1994 the defendant filed a motion to suppress the evidence obtained from the search of his residence pursuant to the warrant.  The district court held an evidentiary hearing and entered an order denying the motion on June 1, 1994.  The district court ruled that probable cause did not exist to issue the warrant, but determined the evidence was admissible because the searching officers had a good faith belief in the warrant's validity. Johnson entered a conditional plea of guilty on June 6, 1994 reserving the right to appeal the suppression issue.

Johnson was sentenced to 120 months in prison.  Johnson then brought this appeal.

## II.

In reviewing the decision of the district court to deny a motion to suppress evidence, this court will not reverse unless the decision is clearly erroneous.  "The decision will be affirmed unless the decision of the district court (1) is unsupported by substantial evidence, (2) is based on an erroneous interpretation of applicable law or, (3) in light of the entire record, the court is left with a firm and definite conviction that a mistake has been made." United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991) (citing United States v. Pantazis, 816 F.2d 361, 363 (8th Cir. 1987).

Counsel for the United States conceded at oral argument that probable cause was insufficient for a search warrant to issue.  We agree with the district court's conclusion that probable cause was

insufficient.

## III.

The Fourth Amendment to the United States Constitution does not expressly preclude the use of evidence obtained in its violation. United States v. Leon, 468 U.S. 897, 906, 104 S. Ct. 3405, 3411, 82 L.Ed.2d 677 (1984). The Court in Leon created the good-faith exception to the exclusionary rule. Id. at 922. The purpose of the exclusionary rule is to deter police misconduct. United States v. Simpkins, 914 F.2d 1054, 1057 (8th Cir. 1990), cert. denied, 498 U.S. 1101 (1991). The exclusionary rule is generally not served by the suppression of evidence seized in a search conducted on a facially valid search warrant. Id. The Leon good faith exception provides four situations in which an officer's reliance on a warrant would be unreasonable: (1) the officer included information in an affidavit that he "knew was false or would have known was false except for his reckless disregard of the truth"; (2) where the judge abandons his role and fails to act in a neutral and detached manner; (3) where the affidavit is so lacking in probable cause that it is objectively unreasonable for the officer to rely on it; or (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid. 468 U.S. at 923. Johnson contends that the first three situations are applicable in this case.

Johnson first asserts that the affidavit included false information for two reasons, first, that the police fabricated the existence of the anonymous tip that led to the search, and secondly the statement that the informant had not given false information in the past created a false impression.

There are no logs or other documentary evidence to prove the existence of the phone call from the anonymous informant. The question of whether the phone call existed is clearly a question of

-6-

fact.  Detective Konopa testified at the suppression hearing that he received the phone call.  Detective Konopa testified that the telephone lines connected to the detective division do not

automatically record calls. Detective Konopa stated he inadvertently disconnected the caller and took the second call in his office. Detective Konopa was unsure if the caller would call back after being disconnected and did not take the time to set up a tape recorder. Detective Konopa also pointed out that his department does not require the taping of anonymous phone calls. The anonymous caller provided reasonably detailed information. To rebut this information and in support of his claim that the police received no such phone call, Johnson offered the testimony of Carol Scott at the supplemental suppression hearing. Scott is an acquaintance of Johnson's, who claimed to be at his residence from noon until around 1:00 pm on the day the police executed the search warrant. Scott testified that Johnson and his wife, Vicki, were the only two present at the house when she arrived and no one else came to the house during the time she was there. The district court judge was present to listen to the testimony and evaluate the credibility of both Detective Konopa and Carol Scott. The district court's finding that an anonymous phone call was made to the police department is not "clearly erroneous." See, Prince v. Sargent, 960 F.2d 720, 720 (8th Cir. 1992).

The affidavit for search warrant had a printed form attached, Attachment B. This form had a section relating to whether the informant was anonymous or confidential, and a section with four printed reasons why the informant is reliable. The officer checked two reasons why the anonymous caller was reliable: "C. Information he has supplied has been corroborated by law enforcement personnel." and "D. He has not given false information in the past."

Judge Van Marel wrote on the search warrant affidavit, "Court finds informant's information to be reliable in that he has given specific information concerning the delivery, packaging and storage

of the marijuana.  His information has been corroborated by law enforcement.  Court knows of no reason for informant to lie."

The police officers had corroborated the information concerning Johnson before seeking the warrant from Judge Van Marel. The issue then becomes whether the officer's included information in the affidavit that they "knew was false or would have known was false except for his reckless disregard of the truth" when they checked the line stating that the informant had not given false information in the past.

In determining whether statements were made with a "reckless disregard for the truth", we have applied the standard used in First Amendment cases. United States v. Clapp, 46 F.3d 795, 801 (8th Cir. 1995). That standard being, "whether the affiant `in fact entertained serious doubts as to the truth of the affidavits or had obvious reasons to doubt the accuracy of the information contained therein.'" Id. (citing United States v. Dorfman, 542 F.Supp. 345, 369 (N.D.Ill. 1982)).

In United States v. Wellman, 33 F.3d 944, 946 (8th Cir. 1994), cert. denied, 115 S. Ct. 1722 (1995) the defendant contended the judge had been misled in issuing a warrant when the affiant, Monroe, wrote in his affidavit, "[t]his Confidential Informant has been proven to be reliable on other cases. This Confidential Informant has given information in several other cases resulting in completed investigations and/or felony arrests." Id. at 947. Monroe's testimony at the suppression hearing revealed that the informant had provided him with only one prior tip which enabled Monroe to solve thirty-five to forty burglaries and led to the convictions of three individuals. Id. The question became whether Monroe could have used clearer language than "on other cases", when in fact the informant had only assisted once previously. Id. The Court believed that this less than precise statement was not intended to mislead the judge. Id. The Court deemed it unreasonable to expect from a nonlawyer law enforcement officer the

-10-

"same clarity of language we would expect to find in an appellate lawyer's brief."  <u>Id.</u>

Both officers Konopa and Robinson were questioned about the assertion checked in Attachment B that "D. He had not given false information in the past." in the suppression hearing. The officers took the literal view of the phrase that the caller had not given false information in the past even though this was the informant's first call. We do not believe that checking this statement rises to the level of making a false statement knowingly or intentionally or with a reckless disregard for the truth. Like the Court in Wellman, we do not subject law enforcement officers to absolute syllogistic precision.

Johnson also contends the police officers acted with reckless disregard for the truth by failing to inform Judge Van Marel that the anonymous caller also provided information regarding a stolen jeep which could not be corroborated. The day after the search warrant relating to Johnson was issued, the police presented an application for a search warrant for the stolen jeep to Judge Van Marel and he refused to sign the warrant because it was without probable cause. The failure to include the information about the jeep does not indicate police misconduct. The stolen jeep had no connection with Johnson and there was no valid reason for referring to it in the affidavit for the Johnson search warrant. There is nothing in this record which would support a finding that the officers were attempting to mislead the magistrate by excluding information regarding this unrelated offense.

Johnson next asserts that the search warrant was not issued by a neutral and detached magistrate. He contends that his prior contacts with Judge Van Marel demonstrate that a reasonable person would doubt the judge's impartiality.

Judge Steven Van Marel has served as a part time Magistrate and as a District Associate Court Judge. The first contact cited

by Johnson is a letter dated October 27, 1989 which Johnson wrote

to Judge Van Marel from the Story County jail complaining about not being given time-served credit on a case. The record next shows that Johnson was upset because Judge Van Marel refused to assist Johnson in filing a criminal complaint which Johnson sought to file in September, 1991. It next appears that Johnson brought a civil action against Judge Van Marel and other judges in that area in October, 1991 alleging that he had been falsely arrested and imprisoned. Judge Van Marel testified that after he was served with the complaint he contacted the Iowa Attorney General's office which was responsible for the defense of judicial officers. Judge Van Marel had no further contact with Johnson until he learned the case had been dismissed.

Johnson also asserts that he publicly stated that he thought that the Judge had obtained his license to practice law in a Crackerjack box and that the Judge's parents probably bribed the bar examiners to get him admitted to the Iowa bar.

A witness for Johnson at the supplemental hearing testified that Judge Van Marel presided over a hearing concerning a dispute between Johnson and the City of Ames over a pile of wood chips in the fall of 1993. He testified that when Judge Van Marel was asked to recuse himself by Johnson's attorney, Judge Van Marel became visibly upset and terminated the hearing.

The final evidence presented by Johnson was a letter written by Johnson to Judge Van Marel dated October 14, 1993 objecting to taxation of costs in the case entitled State v. Johnson, which had been reversed by the Court of Appeals of Iowa, No. 92-1049, and stating that he believed Judge Van Marel had been recused from cases involving Johnson.

All of the incidents referred to by Johnson establish that

Johnson did not like Judge Van Marel, but the incidents are tempered by evidence that Johnson held the same dislike towards all

of the other judges in Story County.  The record is devoid of any showing that the incidents referred to caused Judge Van Marel to exhibit any prejudice toward Johnson.

Judge Longstaff found after considering this evidence in  two separate hearings that Judge Van Marel's impartially in considering the search warrant could not be reasonably questioned.  After a careful review of the record, we agree that it was not error for Judge Van Marel to sign the warrant for the search of Johnson's home.

Johnson finally contends the officers' reliance on the warrant was objectively unreasonable based on an affidavit so lacking indicia of probable cause.  In reviewing the third prong of the Leon test, we defer to a finding of good faith unless clearly erroneous, but subject to de novo review conclusions about the objective reasonableness of the officers reliance.  United States v. Jackson, 67 F.3d 1359, 1366 (8th Cir. 1995).  When assessing the objective reasonableness of officers executing a warrant, we "must look to the totality of the circumstances," including information that was not presented to the issuing judge.  Simpkins, 914 F.2d at 1057, (citing United States v. Martin, 833 F.2d 752, 756 (8th Cir. 1987)).  The district court found that the officers were acting in good faith when they executed the warrant.

In United States v. Gibson, the police department received an anonymous phone call stating that a white male and his wife were dealing cocaine from a specific address.  928 F.2d at 251-52.  The caller stated she had been inside the house that day and had seen money and cocaine.  Id. at 252.  The caller also described the dogs and the cars at the residence.  Id.  An officer drove by the house and observed one of the described cars and one of the dogs.  Id. The officer then checked the physical description of the defendants

-16-

given by the caller against records of the state department of revenue.  <u>Id.</u>  The officer then prepared an affidavit for a search

warrant. Id. Although details were corroborated there was no police observation of criminal activity and no information about the reliability of the caller. Id. at 253. On appeal, this Court concluded that there was insufficient probable cause to issue the warrant. Id. However, the Court went on to state, "Nonetheless we hold that the district court did not err in denying Gibson's motion to suppress because the police acted in objectively reasonable reliance on a warrant issued by a neutral magistrate." Id.

We believe this case is comparable to Gibson. As in Gibson, the information given to the police by the anonymous caller was specific as to time, place, description of the drugs, and the quantity. The caller named Johnson and his wife, Vicki. The caller also described the person entering the residence as a white male, tall and slender who drove a bronze-colored Bronco-type vehicle. The caller made reference to the place where the marijuana would be found. The officers also submitted the facts to an Assistant County Attorney, who advised them to seek a search warrant. Seeking the advice of an attorney can be factored in to determine if an officer's conduct is objectively reasonable. United States v. Mendosa, 989 F.2d 366, 369-70 (9th Cir. 1993). It becomes clear that the officer's reliance on the validity of the search warrant was objectively reasonable.

## IV.

After a careful consideration of the entire record, we are satisfied that the district court's decision sustaining the search of Johnson's residence under the Leon good faith exception was not clearly erroneous. United States v. Rosnow, 977 F.2d 399, 409 (8th Cir. 1992). The decision of the district court is hereby affirmed.

RICHARD S. ARNOLD, Chief Judge, dissenting.

The affidavit for the warrant stated that the anonymous

-18-

informant who had given all of the information on which a warrant was to be based had not given false information in the past.  With

all respect to the Court, I believe this statement was misleading. In fact, the affiant had never heard from the informant before. The clear import of the statement was that the informant had previously given truthful information, or, at least, information that had not been shown to be false.

This is hardly a matter of requiring law-enforcement officers to observe "syllogistic precision," ante at 7. It is, rather, a matter of common ordinary speech. A statement that an informant had not previously given false information is clearly calculated to influence the magistrate to whom the application for warrant was to be submitted. The statement could hardly have been other than deliberate. It is not contended that the officer making the affidavit believed that the informant had furnished information on some previous occasion. To read the statement absolutely literally seems disingenuous to me, and certainly not the way one would understand the statement under the circumstances. At the very least, it could have been explained that the informant had not, to the officers' knowledge, given false information in the past, for the simple reason that the officers, so far as they knew, had never heard from this particular informant before.

For this reason, it seems to me that the affidavit falls clearly within one of the exceptions to the Leon "good faith" rule, and that the motion to suppress should have been granted.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.