_____

95-1095
_____

United States of America,                 *
                                           *
    Appellee,          *
                                           *
    v.                 *   Appeal from the United States
                                           *   District Court for the
                                           *   Western District of Missouri.
Andre L. Phillips,                         *
                                           *
    Appellant.         *
                                    _____

Submitted:   June 13, 1996

Filed:   July 3, 1996
                                    _____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges.
                                    _____

MURPHY, Circuit Judge.


Andre L. Phillips appeals from a judgment of conviction for possession with intent to distribute cocaine base.  Prior to pleading guilty, Phillips had filed a motion to suppress evidence seized from his residence on the basis that the search warrants were invalid under the Fourth Amendment.  The district court[1] denied his motion to suppress, and Phillips now appeals that ruling.  We affirm.

**I.**


Shortly after 8:00 p.m. on Friday night, February 18, 1994,

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

Kansas City police officers responded to a reported shooting at 4339 Norton.  While en route, the officers learned that a shooting victim was at a nearby residence.  They stopped to speak with the victim, Elijah Zakka, who said he had been shot at 4339 Norton, and then went to the scene, arriving about twenty minutes after the shooting.  They discovered Ejuan Neal lying dead in a pool of blood in the bedroom.  The bullet that had killed Neal had gone completely through his body.  Police found numerous .9 millimeter casings in the driveway and five bullet holes in the front of the house.  Sometime around 9:00 p.m., Detective George Barrios interviewed Phillips and other bystanders in the vicinity.  Phillips said he had heard the gunshots but did not know anything more.

The next day, Detective Barrios interviewed Zakka in the hospital. Zakka said he had been at 4339 Norton when three individuals, Ejuan Neal, Mark McFall, and a woman named Coco, entered and asked him for his money and jewelry.  Zakka noticed a medium frame revolver in Neal's hand and ran towards the bedroom.  Neal shot Zakka in the leg as McFall ran outside and fired a few shots at the house before leaving the scene.  In the meantime, Neal and Zakka wrestled in the bedroom, Zakka pulled the revolver's trigger twice, Neal fell to the ground, and Zakka dropped the gun and left the house.  The revolver was never recovered.

On February 21, 1994, a reliable confidential informant contacted Detective Reed Buente.  The informant stated that he had been with Neal and McFall on the night of the shooting.  The two men had told the informant they had something to do, and shortly after they left, the informant heard several gunshots coming from the area of 4339 Norton.  A few minutes later, Coco arrived at the house where the informant was and told the informant that Neal and McFall had robbed the drug house at 4339 Norton.  Phillips then arrived with several other persons.

2

The informant heard Phillips state that he had been in his drug house at 4401 Norton cutting cocaine when he heard several gunshots. Phillips said he thought the shots were coming from his drug house at 4339 Norton, so he grabbed his Mac 12 .380 caliber pistol, ran outside, and started shooting toward 4339 Norton. Phillips reported he had then gone into the house, saw Neal lying on the floor, and kicked him several times. The informant also stated that Phillips kept weapons at his residence at 4324 Elmwood, which was approximately six blocks from the Norton drug houses. According to the testimony of Detective Barrios, this distance was close enough for Phillips to have had time to go home to change his clothing before being interviewed at the scene by the police.

Based on this information and the discovery of .380 casings between the two Norton drug houses, Detective Barrios obtained a warrant to search 4324 Elmwood for a medium frame revolver, a .380 caliber semi-automatic pistol, and bloody clothing. The affidavit accompanying the warrant application described the events leading to the discovery of Ejuan Neal's body at 4339 Norton, the observation of blood in the bedroom and bullet casings in the driveway, and Zakka's statements concerning the shooting and his firing of the missing revolver. The affidavit also included statements of the informant, "who had proven reliable in the past", that Phillips said he had shot at 4339 Norton with a Mac 12 .380 caliber pistol and kicked the victim inside several times, and that Phillips kept guns at 4324 Elmwood.

While executing the search warrant at 4324 Elmwood, police discovered inside a safe 110 grams of cocaine base, over $5,000 in U.S. currency, and documents bearing Phillips' name. They also found several other weapons, a scale, and some crack cocaine. They did not seize this evidence, however, until after obtaining a second search warrant authorizing the seizure.

After Phillips was indicted, he moved to suppress the evidence

seized from his residence. United States Magistrate Judge Robert E. Larsen conducted a suppression hearing and issued a report and recommendation denying the motion, which was adopted by the district court.

The magistrate judge found that the second search warrant was supported by probable cause, but that the first warrant was not. Although it was fairly probable that Phillips would possess the guns and bloody clothing, the court found no probable cause to believe those items were located at 4324 Elmwood. It found, however, that the search under the first warrant was carried out in good faith, and the motion to suppress was denied under United States v. Leon, 468 U.S. 897 (1984). The court found that Detective Barrios had not deliberately or recklessly omitted or misrepresented facts in the first affidavit, and that the affidavit was not so lacking in probable cause that officers could not reasonably rely on the warrant's validity.

Phillips entered a conditional plea of guilty, reserving the right to appeal the adverse determination of specified pretrial motions. He was subsequently sentenced by the district court to 240 months imprisonment, and timely filed this appeal.

## II.

Phillips argues that the first search warrant was invalid because it was based on a "bare bones" affidavit that lacked probable cause and that the good faith exception to the exclusionary rule did not apply. Since the first warrant should not have been issued, he contends that the evidence seized under the second search warrant should have been suppressed as "fruit of the poisonous tree." See United States v. Segura, 468 U.S. 796, 804 (1984). The government responds that probable cause existed for the issuance of the first search warrant and that the police also acted in good faith in relying on the warrant's validity.

4

A district court's decision to deny a motion to suppress evidence seized pursuant to a search warrant will not be reversed unless it is "unsupported by the evidence, based on an erroneous view of the applicable law or we are left with a firm conviction that a mistake has been made."[2] United States v. Edmiston, 46 F.3d 786, 788 (8th Cir. 1995) (citation omitted).  A warrant is supported by probable cause if "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched.  Id. at 789, quoting Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995).  Affidavits should be read in a "common-sense and realistic fashion" and magistrates must make a practical decision based on the totality of the circumstances.  Gladney, 48 F.3d at 312 (citation omitted).

The supporting affidavit for the first warrant contained five paragraphs explaining the factual basis for searching for guns and bloody clothing at 4324 Elmwood.  It stated that police had received a call about shots fired in that area, that they had spoken with the shooting victim, Elijah Zakka, and that they had found the deceased body of Ejuan Neal at the scene lying in a substantial amount of blood and bullet casings in the driveway.  The affidavit also stated that Zakka had told two witnesses that he had been shot in the leg, had twice pulled the trigger of Neal's medium size revolver during their struggle in the bedroom, and had

---

[2]The Supreme Court recently held that "probable cause to make a warrantless search should be reviewed *de novo*."  Ornelas v. United States, 116 S.Ct. 1657, 1659 (1996).  The Court also reaffirmed that the "Fourth Amendment demonstrates a 'strong preference for searches conducted pursuant to a warrant.'"  Id. at 1663, quoting Illinois v. Gates, 462 U.S. 213, 236 (1983).  The level of scrutiny applied to a magistrate's probable cause determination to issue a warrant is accordingly less than that for warrantless searches.  Id.

dropped the revolver before leaving the house. That revolver had not been found, but according to a confidential informant "who had proven reliable in the past", Phillips had been inside 4339 Norton after Neal had left and before the police had arrived. The informant had heard the shooting at 4339 Norton and said a woman named Coco had told him Neal and two others had been involved in it. Shortly thereafter, the informant overheard Phillips say he had heard the gunshots while cutting cocaine at his drug house at 4401 Norton and had gone out to shoot at 4339 Norton in order to protect his drug house, and then went inside where he kicked the victim's body. The informant had also reported that Phillips kept guns at 4324 Elmwood.

Viewed as a whole, the detail and specificity of this affidavit is greater than what has been characterized as a bare bones affidavit. For example, in United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995), cert. denied, 116 S.Ct. 1032 (1996), a warrant to search a defendant's house for several weapons was based on a three sentence paragraph in the affidavit containing an informant's statement that the defendant possessed the guns and the affiant's statement that he had confirmed the defendant's address and his release from prison for a murder conviction. Even though the court called the affidavit "bare bones at best," it held there was sufficient probable cause based on the information in the affidavit and the officer's independent corroboration of the informant's statements. Id.

The connection between the Elmwood address and the items to be seized was established by the confidential informant whose reliability was noted in the affidavit. His statements about the robbery and shooting were corroborated by police observations at the scene, the discovery of the dead body and bullet casings, and the robbery victim's statements. Although there was no corroboration of his statement that Phillips kept guns at 4324 Elmwood, it is a reasonable inference that this information was

reliable based on the stated previous experience with the informant and the independent corroboration of his other comments. See Edmiston, 46 F.3d at 789; Gladney, 48 F.3d at 313. These reported facts viewed from the standpoint of an objectively reasonable officer essentially established probable cause that the weapons and bloody clothing would be found at the Elmwood address. Gladney, 48 F.3d at 312.

We need not specifically rule on whether the affidavit stated probable cause, however, since the magistrate judge properly determined that the evidence should not be suppressed under the good faith exception to the warrant requirement. Under the good faith doctrine, evidence obtained pursuant to a search warrant that is later found to be invalid does not violate the Fourth Amendment if the officer objectively and reasonably relied in good faith on the issuing court's determination of probable cause and technical sufficiency. Leon, 468 U.S. at 922. An officer acting pursuant to a warrant generally establishes good faith in conducting the search and "will rarely require any deep inquiry into reasonableness." Id. (citation omitted).

Situations in which an officer's reliance on a warrant would be unreasonable are when: (1) the officer included information in the affidavit he "knew was false or would have known was false except for his reckless disregard of the truth"; (2) the affidavit is so lacking in probable cause that it is objectively unreasonable for the officer to rely on it; (3) the judge failed to act in a neutral and detached manner; or (4) the warrant is so facially deficient that the officer cannot reasonably presume the warrant to be valid. Id. at 923; United States v. Johnson, 78 F.3d 1258, 1261 (8th Cir. 1996). Phillips contends that the first three situations apply to this case. Johnson, 78 F.3d at 1261.

Phillips first complains that the affidavit omitted the fact that the bullet killing Ejuan Neal had passed through his body. He

7

asserts that this fact shows the murder weapon could not be identified and its omission contributed to the bare bones nature of the affidavit. Omitted information that is "highly relevant" or "clearly critical" may constitute reckless disregard, but it must be shown that if the information had been included, the affidavit would not have been sufficient to support a finding of probable cause. United States v. Jacobs, 986 F.2d 1231, 1234 (8th Cir. 1993).

There is no evidence to suggest, and Phillips does not contend in his brief, that Detective Barrios intentionally or recklessly made the affidavit misleading by omitting the information about the bullet. The omitted fact about the bullet passing through Neal's body is neither "highly relevant" nor "clearly critical" to whether probable cause existed for believing Phillips had committed a crime by shooting into a dwelling, had been involved in the homicide in some fashion, or had taken possession of the missing weapon. See id. at 1235. Phillips has therefore failed to show that Detective Barrios did not intentionally or recklessly omit facts to mislead the issuing court.

Phillips next contends that the police officers did not act in good faith and reasonably believe that probable cause existed to search for the weapons and bloody clothing at 4324 Elmwood. He characterizes the affidavit as bare bones and utterly lacking in any indicia of probable cause.

As discussed previously, the affidavit supporting the first search warrant essentially made out probable cause that guns would be found at 4324 Elmwood. There was a great deal of blood surrounding Neal's body from which a "reasonably well trained officer" could conclude that Phillips would have blood on his clothing after kicking the body. See Leon, 468 U.S. at 926. Given that the Elmwood residence was about six blocks from 4339 Norton,

8

and Phillips was not interviewed by the police until nearly an hour after the shooting incident, officers could have reasonably believed that Phillips had sufficient time to go to the Elmwood house, change his clothing, drop off the guns, and return to the Norton area.  In light of the specificity and details in the affidavit, the magistrate judge did not err in determining that the officers had an objectively reasonable good faith belief in the issuing court's determination of probable cause.  See Johnson, 78 F.3d at 1264.

The amount of information in the affidavit does not support Phillips' characterization of it.  There is also no evidence in the record to show that the issuing court exhibited any prejudice toward Phillips or was partial to one side.  We therefore find no error in the court's signing of the warrant to search the Elmwood residence.  See id. at 1263.

For these reasons, the district court did not clearly err in sustaining the search of Phillips' residence under the Leon good faith exception.  Id. at 1264.  Consequently, Phillips' argument that the first search warrant poisoned the validity of the second search warrant also fails.  See Segura v. United States, 468 U.S. 796, 804 (1984).  The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9