**UNITED STATES of America,
Appellee/Cross-appellant,**

**v.**

**Kevin Eugene GIBSON,
Appellant/Cross-appellee.**

**Nos. 89–2994, 90–1057 and 90–1572.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1990.

Decided March 12, 1991.

Donald R. Cooley, Springfield, Mo., for appellant/cross-appellee.

Richard E. Monroe, Springfield, Mo., for appellee/cross-appellant.

Before McMILLIAN and BOWMAN, Circuit Judges, and CAHILL,* District Judge.

McMILLIAN, Circuit Judge.

Kevin Eugene Gibson appeals (No. 89–2994WM) from a final judgment entered in the District Court[1] for the Western District of Missouri upon a jury verdict finding him guilty of possession with intent to distribute marijuana (count I) and possession with intent to distribute cocaine (count II) in violation of 21 U.S.C. § 841(a)(1). Gibson also appeals (No. 90–1572WM) the fifteen year sentence the District Court[2] imposed on him under 18 U.S.C. § 924(e)(1), for possession of firearms by a person previously convicted of a felony (count III) in violation of 18 U.S.C. § 922(g). For reversal, Gibson argues the district court erred in (1) denying his motion to suppress evidence obtained pursuant to a warrant issued without probable cause, (2) giving the jury a "mere presence" instruction, and (3) sentencing him for unlawful firearm possession under the sentencing enhancement statute, 18 U.S.C. § 924(e). The government argues (No. 90–1057WM) that the district court erred in applying the Federal Sentencing Guidelines (Guidelines) to the drug counts (counts I and II). For the reasons discussed below, we affirm the judgments of the district court.

BACKGROUND FACTS

On March 8, 1989, the Springfield, Missouri Police Department received an anony-

---

* The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable William R. Collinson, Senior United States District Judge for the Western District of Missouri.

2. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

mous telephone call. The caller told police that a white male, described as being six feet two inches tall, thin build, with brown hair, beard, and mustache, and his wife were dealing cocaine from 454 W. Lombard, Springfield, Missouri. The caller stated that he or she had been inside the house on that day and had seen about $30,000.00 in cash in several bank bags and three kilos of cocaine in and on a desk in the basement of the house. The caller had also learned that a new shipment of cocaine was expected within a few days. The caller also stated that there was a pitbull outside and a doberman inside the house, and described three vehicles, a 1979 or 1980 Yellow Chevrolet pick-up truck and two Ford Mustangs, one white and one gray, all owned by the residents.

On March 15, 1990, Springfield Police Officer Mark Webb, who had been assigned to a special investigations unit handling narcotics and vice, drove by the address provided by the caller. At that address Officer Webb observed a white Ford Mustang with no license plates on it and a pitbull chained to a doghouse in the back of the residence. Webb also observed that the house appeared to have a basement because there were windows at the foundation. He then checked the utilities records and learned that the account at 454 W. Lombard was in the name of Kevin E. Gibson and that he was married and employed.

Webb then checked with the state department of revenue and learned that Gibson was approximately six feet one inch tall, about one hundred eighty-five pounds, with hazel eyes. He also learned that Gibson held title to a 1980 Ford and a 1979 Ford, the latter bearing Missouri license NYW 714.

Officer Webb then prepared an affidavit and a state court judge issued a search warrant for the above address, including vehicles and outbuildings, for cocaine, drug paraphernalia, drug records, and proceeds.

The search warrant was executed on March 17, 1989. Gibson was not at home, but he was later arrested at his place of employment. Gibson's co-defendant Eliza-beth Carrow was found in the living room of the house. Although Gibson and Carrow lived together, they were not married.

At the house police also found several large containers of marijuana, a bank bag and several plastic vials containing cocaine, cash, scales, a ledger and other drug paraphernalia, as well as credit cards, credit card receipts, bank statements, and bills all in Gibson's name. They also found two dogs—a rottweiler and a pitbull. Altogether, the police seized 79.05 pounds of marijuana and .88 of a pound of cocaine. The police also found two pistols, one rifle, and one shotgun in the house.

On July 22, 1989, Gibson and co-defendant Elizabeth Carrow were indicted and each was charged with one count of possession of marijuana with intent to distribute and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Gibson was also charged with one count of unlawful possession of firearms in violation of 18 U.S.C. §§ 922(g), 924(e).

On August 31, 1989, Gibson filed a motion to suppress evidence and a motion to sever the drug and firearm counts. The district court, without a hearing, denied the motion to suppress and granted the motion to sever. The drug counts were tried to a jury. The jury found Gibson guilty of both counts and Carrow guilty of misdemeanor possession. After considering the presentence investigation report, the district court found that Gibson's three prior burglary convictions constituted a single scheme for purposes of calculating the applicable criminal history category as required by the Federal Sentencing Guidelines. The district court then determined that the applicable guideline sentencing range was 57–71 months and sentenced Gibson to 70 months imprisonment for counts I and II, 4 years supervised release, and a special assessment of $100.00.

On January 26, 1990, Gibson entered a conditional guilty plea, pursuant to a plea agreement, on the firearms count (count III). The district court sentenced Gibson to 15 years imprisonment and 3 years supervised release, to be served concurrently with the previously imposed sentences on counts I and II, and a special assessment of

$50.00. These appeals followed.

## MOTION TO SUPPRESS

Gibson first argues that the district court erred in denying his motion to suppress. He argues that probable cause did not exist for the issuance of the search warrant because (1) the information was provided by an anonymous tipster, (2) the police had no information about the reliability of the tipster, and (3) there was little meaningful corroboration of the tipster's information. He further argues that there was no police observation of any criminal activity, and that the corroboration by the police related solely to innocuous details, for example, the presence of a doghouse and the likelihood that the house had a basement.

Gibson argues that an affidavit premised upon an anonymous informant's tip is unreliable because of the susceptibility of its hearsay character to special problems of credibility, perception, and veracity. *See Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983) (*Gates*). He argues that the anonymous caller did not know the names of the residents in the house or the age or specific description of the man or even a general description of the woman. Gibson further argues that the search cannot be upheld under the good faith exception when the only suggestion of criminal activity was based upon an uncorroborated anonymous tip.

The government argues that there was probable cause. The government emphasizes that the information supplied by the anonymous caller was detailed and based on recent personal observation. The government notes that the anonymous caller described, in varying detail, the house, its address and location, the residents of the house, the dogs, and the cars, as well as drugs and cash. The government argues that the police corroborated much of the information by surveillance and investigation. The government argues in the alternative that even if there were no probable cause for the search warrant, we need not suppress the evidence because the police acted in good faith. *See United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984).

In reviewing a decision by the district court to deny a motion to suppress, we will not reverse unless the decision is "clearly erroneous." *E.g., United States v. Eisenberg*, 807 F.2d 1446, 1449 (8th Cir. 1986) (citing *United States v. Lewis*, 738 F.2d 916, 920 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985)). The decision will be affirmed unless the decision of the district court (1) is unsupported by substantial evidence, (2) is based on an erroneous interpretation of applicable law or, (3) in light of the entire record, the court is left with a firm and definite conviction that a mistake has been made. *United States v. Pantazis*, 816 F.2d 361, 363 (8th Cir.1987) (*citing United States v. Lewis*, 738 F.2d at 920).

We do not believe that there was probable cause to issue the warrant. Probable cause exists only when the affidavit sets forth sufficient facts that would lead a prudent person to believe "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. In the present case, the affidavit sets forth the information supplied by the anonymous caller and the information that had been corroborated by the police. At most, however, only several innocent details had been corroborated by the police in driving by the address given and by making a few telephone calls. There was neither surveillance nor observation of unusual civilian or vehicular traffic at the address, nor were there very short visits characteristic of drug trafficking.[3]

Nonetheless we hold that the district court did not err in denying Gibson's motion to suppress because the police acted in objectively reasonable reliance on a warrant issued by a neutral magistrate. *See United States v. Leon*, 468 U.S. at 922, 104 S.Ct. at 3420. Ordinarily, a police officer cannot be expected to question a judge's

---

**3.** Our holding is limited to the facts of the instant case. Nothing expressed herein should be construed as suggesting that an informant's tip can never be corroborated by innocent details. Each case must be evaluated according to its particular facts.

probable cause determination. Suppression is an appropriate remedy if the judge, in issuing the warrant, was misled by information in the affidavit that the affiant knew or would have known it was false except for the affiant's reckless disregard for the truth. Evidence should be suppressed only if the affiant-officer could not have harbored an objectively reasonable belief in the existence of probable cause. *Id.* at 921–23; *e.g., United States v. Stelten,* 867 F.2d 446, 451 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 95, 107 L.Ed.2d 59 (1989); *United States v. Martin,* 833 F.2d 752, 756 (8th Cir.1987), *cert. denied,* —— U.S. ——, 110 S.Ct. 1793, 108 L.Ed.2d 794 (1990). In the instant case there is no indication that in obtaining the warrant the police failed to disclose material information to the issuing judge. Hence, the district court did not commit reversible error in denying Gibson's motion to suppress.

## MERE PRESENCE

■ Gibson next argues that the district court erred in giving the jury a constructive possession instruction at the request of co-defendant Carrow. Gibson argues that this instruction was prejudicial to him because it presumed he was guilty of illegal activities and instructed the jury not only that he was guilty, but that he was the only person in control of the illegal substances found in the household. He argues that, in effect, the instruction directed a verdict against him.

The government agrees that the instruction was erroneous and prejudicial, but argues that the error was harmless in the present case. The government argues that the instruction was a variation of the "mere presence" instruction and was given as an amplification of the aiding and abetting instruction, which presumes that someone else must have committed the offense before the theory of vicarious criminal liability can cause the aider and abetter to be convicted.

We hold that the giving of the "mere presence" instruction was not reversible error. When viewed in light of the entire record, *United States v. Smith,* 596 F.2d 319, 322 (8th Cir.1979), and when the instructions are viewed as a whole, *United States v. Kirk,* 534 F.2d 1262, 1279 (8th Cir.1976), *cert. denied,* 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977), the instructions set forth the concept of separate liability as to each defendant, and therefore, any error was harmless to appellant Gibson. We recommend, however, that the district courts avoid giving this type of instruction in the future.

## SENTENCING ENHANCEMENT

■ Gibson next argues that the district court erred in sentencing him pursuant to the sentence enhancement statute, 18 U.S.C. § 924(e)(1). Section 924(e)(1) mandates a minimum sentence of fifteen years without probation or parole for persons having three or more prior convictions for a violent felony or a serious drug offense and defines the term "violent felony" to include burglary. 18 U.S.C. § 924(e)(2)(B). Gibson has three prior second degree burglary convictions. He argues each burglary involved the theft of property from vacant business offices after hours and thus is not a "violent felony" as defined by 18 U.S.C. § 924(e)(2)(B). Gibson further argues that even if the three burglary convictions can be construed as violent felonies for purposes of 18 U.S.C. § 924(e)(2)(B), the convictions should be considered as only one burglary for purposes of sentencing because they were part of a single criminal scheme.

We hold that the district court did not err in sentencing Gibson under the sentence enhancement statute. The Supreme Court has held that a person is convicted of a burglary, for purposes of sentence enhancement under 18 U.S.C. § 924(e), when he or she is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime. *Taylor v. United States,* —— U.S. ——, 110 S.Ct. 2143, 2158, 109 L.Ed.2d 607 (1990). Section 924(e) does not require separate prosecutions, just that the offenses occurred at different times. 18 U.S.C. § 924(e)(1). Here, the prior offenses occurred on December 12 and 18, 1982, and on January 6, 1983.

SENTENCING GUIDELINES

 The government argues that the district court erred in finding that it was improbable that the firearms were used in connection with the drug trafficking offenses, Guidelines § 2D1.1(b)(1), and that the prior burglary offenses were part of a single scheme or transaction, Guidelines § 4A1.2. The government argues that the total offense level should have been 26, the criminal history category IV and the applicable guideline sentencing range 92–115 months, instead of 57–71 months (total offense level of 24 at criminal history category II).

Even if we agreed with both of the government's arguments, the maximum guideline sentence for the two drug counts would be 115 months. The mandatory 180 months sentence imposed for the unlawful firearms possession count, which we have affirmed, overlaps both the sentence actually imposed by the district court and the longer sentence sought by the government. Because we affirm the sentence imposed on the unlawful firearms possession count, we need not reach this issue.

Accordingly, the judgments of the district court are affirmed.