NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0599n.06

No. 12-5052

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 24, 2013*
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,                )
                                         )     ON APPEAL FROM THE
        *Plaintiff-Appellee*,            )     UNITED STATES DISTRICT
                                         )     COURT FOR THE WESTERN
v.                                       )     DISTRICT OF TENNESSEE
                                         )
RONNIE BUFFER,                           )     **O P I N I O N**
                                         )
        *Defendant-Appellant*.           )

BEFORE:    KEITH, MARTIN, and COLE, Circuit Judges.

COLE, Circuit Judge.   Defendant-Appellant Ronnie Buffer moved the district court to suppress evidence gathered as a result of a search warrant and arrest.  The district court denied the motion.  On appeal, Buffer argues that the district court erred in determining, first, that the warrant was supported by probable cause, and second, that even if the warrant was not supported by probable cause, that the good-faith exception applied.  Because we find that the district court erred in both determinations, we REVERSE the district court's order denying Buffer's motion to suppress, VACATE the ensuing judgment of conviction, and REMAND for further proceedings in accordance with this opinion.

I.

This case began when the Memphis Police Department received a so-called "command complaint" that drugs were being sold from 2147 Turner Avenue (the "Residence") in Memphis,

Tennessee. The record is silent regarding what a command complaint actually is and when this one was received. The district court found, and the government suggested at oral argument, that it was an anonymous tip.

On September 24, 2009, Detective Otis Edwards surveilled the Residence and observed "several visits" there, each lasting one to three minutes. Although it is unclear from the record, it appears that Buffer occupied the Residence at this time. Edwards, who is experienced and trained in narcotics investigations, concluded that these short visits were consistent with drug transactions. Edwards stopped one of the vehicles leaving the Residence for a traffic violation and recovered 2.2 grams of marijuana from Luther Sanders, a passenger whom detectives saw "making a transaction" at the door to the Residence.

Based on the command complaint, Edwards's surveillance, and the marijuana found on Sanders during the traffic stop, Edwards submitted an affidavit for a search warrant to the Criminal Court of Shelby County, Tennessee. On September 25, 2009, that court issued a search warrant permitting the police to search the Residence for marijuana, drug proceeds, and drug records. On September 28, 2009, officers executed the search warrant, seizing three loaded handguns, a sawed-off shotgun, marijuana and packaging materials, and $5105 in cash.

Buffer was charged with two counts of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g), one count of unlawful possession of a sawed-off shotgun, *see* 26 U.S.C. §§ 5841, 5861(d) & 5871, and one count of possession of marijuana with intent to distribute, *see* 21 U.S.C. § 841(a)(1).

Buffer executed a rights waiver form and admitted to possession of one of the handguns seized. He then filed a motion to suppress the remaining evidence, which the district court denied. The court found that the search warrant was supported by probable cause, and in the alternative, that the good-faith exception applied.

Buffer pled guilty to one of the two counts of being a felon in possession of a firearm and the sole count of possession of marijuana with intent to distribute. The other two counts were dismissed. Buffer preserved in his plea agreement the right to appeal the district court's denial of his motion to suppress. The district court sentenced him to a term of 66 months in prison. Buffer filed a timely notice of appeal, seeking reversal of the district court's denial of his motion to suppress.

II.

We apply the same standard of review to the district court's determination of probable cause and the application of the good-faith exception. We "review the district court's factual findings for clear error," and we review its legal conclusions as to whether probable cause exists and whether the good-faith exception applies de novo. *United States v. Leake*, 998 F.2d 1359, 1362, 1366 (6th Cir. 1993).

A.

Search warrants must issue "only upon a finding of 'probable cause.'" *United States v. Beals*, 698 F.3d 248, 264 (6th Cir. 2012) (quoting U.S. Const. amend. IV). In *Illinois v. Gates*, the Supreme Court established a "totality of the circumstances" test for determining whether probable cause exists:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. 213, 238 (1983). The issuing magistrate must have a "substantial basis" to conclude that evidence of wrongdoing will be found at the location to be searched. *Jones v. United States*, 362 U.S. 257, 271 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 85 (1980). Put another way, there must be "a nexus between the place to be searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998) (internal quotation marks and citation omitted). "An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit," which is not sufficient to support a finding of probable cause. *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) (citing *Aguilar v. Texas*, 378 U.S. 108, 114 (1964)). However, reviewing courts must afford "great deference" to the magistrate's finding of probable cause. *See id.* at 1376.

Where, as here, the informant is anonymous, and no information exists as to the informant's reliability, probable cause can still exist if the officer sufficiently corroborates the tip. *See United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) ("[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." (internal quotation marks and citations omitted)). Accordingly, we must first determine whether, under the totality of the circumstances, Edwards corroborated the tip.

Buffer and the government disagree as to whether several visits to a residence are indicative of drug activity. Buffer points to *United States v. King*, 230 F.3d 1361, 2000 WL 1359635 (6th Cir. Sept. 14, 2000) (per curiam) (unpublished table opinion), in which we stated that "[h]aving frequent visitors, who stay a short time and then leave, is not necessarily indicative of criminal activity." *Id.* at *4. The government directs us to two cases indicating that unusual traffic or short visits to a residence can corroborate an anonymous tip. *See Weaver*, 99 F.3d at 1379; *United States v. Gibson*, 928 F.2d 250, 252-53 (8th Cir. 1991). As in *King*, however, the statements in *Weaver* and *Gibson* are both dicta, as the courts held that the search warrants in those cases were insufficient for probable cause but speculated that unusual traffic or short visits to the residence may have provided enough corroboration. *See Weaver*, 99 F.3d at 1379; *Gibson*, 928 F.2d at 252-53.

In the case at hand, the visits observed by Edwards were insufficient to provide probable cause. The affidavit states that Edwards observed "several" visits, specifying neither the precise number of visits nor the time span of surveillance. As the government conceded at oral argument, "several" visits could be as few as three, and the time span could have been as long as twenty-four hours. Moreover, the affidavit states in conclusory fashion that Edwards observed Sanders "making a transaction at the door of [the Residence]," but includes no details that would clarify what he meant by that ambiguous phrase. Edwards's observation of as few as three visits, lasting as little as one minute each, over a possible twenty-four-hour span, simply does not support a conclusion that there was a fair probability that evidence of drug trafficking would be found at the Residence.

In the probable cause equation, however, we must also consider the marijuana Edwards found on Sanders during the traffic stop. *See Gates*, 462 U.S. at 238. For two reasons, we conclude that

- 5 -

the discovery of marijuana, even when taken together with the short visits and anonymous tip, did not create a substantial basis for determining that probable cause existed to search the Residence. First, there is no clear nexus between Sanders's possession of the marijuana and the Residence; it is entirely possible, for example, that Sanders already had the marijuana on his person when he arrived at the Residence. This conclusion is supported by the very small quantity of marijuana, the approximate equivalent of one marijuana cigarette, that Edwards found on Sanders—a quantity that hardly suggests a recent drug sale. Moreover, we note that Sanders did not admit to purchasing the marijuana at the Residence. Second, the affidavit says nothing about the allegedly criminal nature of the "transactions" that occurred. The affidavit reveals neither the manner in which the transactions took place nor what, if anything, was exchanged.

For the foregoing reasons, the affidavit reveals that the anonymous tip was insufficiently corroborated. *See Brooks*, 594 F.3d at 493. The district court therefore erred in concluding that the search warrant was supported by probable cause.

B.

However, even if a warrant is not supported by probable cause, we cannot automatically assume that materials seized pursuant to it must be suppressed. *See United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). In *United States v. Leon*, the Supreme Court held that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. 897, 918 (1984); *see also Herring v. United States*, 555 U.S. 135, 141 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth

Amendment violation. Instead, we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future." (citations omitted)). Accordingly, our second task is to determine whether the exclusionary rule is appropriate in this case or whether an exception applies.

One such exception is made for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922. The Supreme Court reasoned that little is gained by penalizing an officer who "act[ed] with objective good faith" because "[i]n most such cases[] there is no police illegality and thus nothing to deter." *Id.* at 920-21. This exception to the exclusionary rule does not apply, however, where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (internal quotation marks and citations omitted); *see also Washington*, 380 F.3d at 241 (noting that "it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for good-faith reliance"). We have since held that an affidavit must establish "a minimally sufficient nexus between the illegal activity and the place to be searched" to suffice for good-faith reliance. *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004).

The affidavit here establishes no such nexus. The only definite connection it draws between the illegal activity—drug trafficking—and the place to be searched—the Residence—is an anonymous tipster's allegation that "drugs were being sold" there. Of course an affidavit consisting of nothing more than an unadorned tip of uncertain reliability is insufficient for good-faith reliance, *see Leake*, 998 F.2d at 1367 (holding that an anonymous tip required more than minimal corroboration to justify applying the good-faith exception), much less probable cause. We would thus expect Edwards's affidavit to include corroborative details that tend to bolster the inchoate

connection. *Id.* But the details offered here fail to do so. The visits—described so vaguely as to be nearly meaningless—provide little information about what sort of evidence police might find inside the walls of the Residence. Nor does the marijuana on Sanders's person—discovered off the premises and in a quantity not indicative of a recent sale—suggest anything more. It was just as likely that the Residence held only remnants of marijuana for personal use as it was that evidence of an entire operation lay within. For all his efforts, Edwards ultimately had little personal knowledge of the kind of wrongdoing he sought evidence of at the Residence. *See Weaver*, 99 F.3d at 1380 (holding that the good-faith exception did not apply where an officer "possessed some information from a previously reliable informant regarding possible criminal activities" but had "little firsthand information and [made] no personal observations").

Taken with only an unadorned tip, the requisite connection never materialized. The affidavit, which did not provide the "substantial basis" necessary for a finding of probable cause, also fails to provide even a "minimally sufficient nexus" that would justify application of the good-faith exception.

This holding is consistent with prior cases in which we addressed the same question. In *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006), we held that the affidavit failed to establish the nexus required to support an officer's good faith belief in the validity of the warrant. The affidavit's single connection between the illegal activity—drug trafficking—and the place to be searched—the defendant's residence—was that the police arrested the defendant on his front porch and found crack cocaine in his pocket in a search incident to the arrest. *Id.* at 520, 526. We declined to apply the good-faith exception in the absence of additional facts directly tying the residence to the

suspected criminal activity. *Id.* at 527. Similarly, the affidavit in this case manifests a critical gap between the observation of limited criminal activity *outside* of a dwelling and the *interior* space that the police sought to search. It is true that Edwards observed "several" brief (but not necessarily criminal) visits and found a small quantity of marijuana on Sanders after one of them. But these facts are wanting for reasons already discussed. What we are left with, as in *McPhearson*, is an affidavit that contains an allegation that one visitor was guilty of "personal possession" of marijuana and conclusory language to paper over the remaining gap. *See id.* at 527. That is not enough to establish a sufficient nexus.

Notwithstanding the government's argument to the contrary, this is not a case like *United States v. McCraven*, 401 F.3d 693 (6th Cir. 2005), in which we held that police reasonably relied on an affidavit stating that a known, reliable informant had personally observed drugs stored inside the residence to be searched. That affidavit established an obvious nexus between the residence and the evidence of illegal activity that police expected to find—the informant placed the drugs in the residence with his own eyes just 72 hours prior. *Id.* at 697. Not so here. The anonymous tip repeated in the affidavit suggested merely that drug transactions occurred at the Residence—not that drugs were being stored inside or that the informant had personally observed any unlawful activity. Edwards's affidavit lacks the level of specificity of the affidavit in *McCraven,* even allowing that he made more meaningful (but largely fruitless) efforts to corroborate the tip. Thus, we believe that a "reasonably well trained officer" would have known the affidavit was insufficient to support the warrant. *See id.* at 698 (quoting *Leon*, 468 U.S. at 922 n.23).

All of this leads us to conclude that the affidavit in this case did not establish the requisite nexus between the house at 2147 Turner Avenue and the evidence of drug trafficking that police hoped to find there.  Because the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923, we hold that the district court erred in applying the good-faith exception.

III.

For the foregoing reasons, we REVERSE the district court's order denying Buffer's motion to suppress, VACATE the ensuing judgment of conviction, and REMAND for further proceedings in accordance with this opinion.