DISSENT JANE B. STRANCH, Circuit Judge, dissenting. A warrant was issued authorizing the search of a residence at 196 Turner Lane on the, basis of an affidavit stating that a police officer had observed Albert White sell one baggie of marijuana in the driveway of that residence and then drive away. The affidavit provided no evidence that drugs were present inside the residence or that drug trafficking had ever occurred there, no direct, evidence that White had sold drugs more than once, and no direct evidence connecting White to the residence except his presence in its driveway on one occasion. The district court concluded that probable cause did not exist for the issuance of the warrant. Nonetheless, the court denied White’s motion to suppress the evidence gathered from that search based on the good-faith exception established in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The majority concludes that this affidavit contained a sufficient nexus between drug trafficking and the inside of the residence to apply the good-faith exception. I respectfully dissent. The Fourth Amendment states that “no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” U.S. Const, amend. IV. To justify the issuance of a warrant to search a particular place, an affidavit must establish a “nexus between the place to be searched and the evidence to be sought.” United States v. Brooks, 594 F.3d 488, 492 (6th Cir. 2010) (quoting United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)). “The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific ‘things’ to be searched for and seized are located on the property to which entry is sought.” Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). The district court concluded that the affidavit in this case was insufficient to establish probable cause to search the residence because it failed to establish the required nexus between the house and drug trafficking. Specifically, the district court noted that the affidavit at no point provides information: that the property is White’s residence, that White was ever seen entering or exiting the residence, or that he has any connection or interest in it whatsoever. Without some connection between the observed drug transaction and the residence, besides the fact that it took place in the property’s driveway, the search warrant could have authorized the search of an innocent bystander’s 'home where White chose to conduct this single sale of marijuana. I agree that such limited evidence did not establish probable cause to issue this warrant, and the government concedes for purposes of appeal that the affidavit did not establish probable cause. The warrant in this case thus violated the Fourth Amendment. Generally, evidence obtained in violation of the Fourth Amendment is suppressed under the exclusionary rule. Illinois v. Krull, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). The Supreme Court has created a good-faith exception to the exclusionary rule, however, when an officer obtained evidence “in objectively reasonable reliance on a subsequently invalidated search warrant.” Leon, 468 U.S. at 922, 104 S.Ct. 3405. Leon provided four examples of when suppression of evidence remains an appropriate remedy because the circumstances demonstrate that the officer did not act in good faith or did not have objectively reasonable grounds for believing that probable cause existed. Id. at 923, 104 S.Ct. 3405. As relevant here, the good-faith exception is inappropriate “where the affidavit was nothing more than a ‘bare bones’ affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” United States v. Hython, 443 F.3d 480, 484 (6th Cir. 2006). Although the Leon good-faith standard is less demanding than the probable cause standard, the affidavit must still contain “a minimally sufficient nexus between the illegal activity and the place to be searched.” United States v. Brown, 828 F.3d 375, 385 (6th Cir. 2016) (quoting Carpenter, 360 F.3d at 596). This circuit has not applied the good-faith exception when police searched the inside of a residence based only on evidence that the defendant engaged in illegal activity outside it, without some additional evidence from which illegal activity inside the residence could be inferred. See United States v. Buffer, 529 Fed.Appx. 482, 487 (6th Cir. 2013) (rejecting the good-faith exception due to the “critical gap between the observation of limited criminal activity outside of a dwelling and the interior space that the police sought to search”). In Brown, we considered an affidavit that described the defendant’s arrest three weeks earlier during an attempted heroin delivery. 828 F.3d at 379. After the arrest, officers found the defendant’s car parked outside a heroin dealer’s home and performed a canine search during which the dog alerted. Id. The affidavit also noted that the defendant had a prior conviction for conspiracy to distribute marijuana. Id. at 380. Despite the facts that the defendant had been arrested recently for drug trafficking, had a prior conviction for drug trafficking, and his car was connected to drug trafficking, we concluded that the good-faith exception did not apply to a search of the defendant’s residence because thé only fact in the affidavit connecting the defendant’s residence to his drug dealing activity was the registration of his car to the residence. Id. at 385-86. We explained that: “In sum, our cases teach, as a general matter, that if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant’s home—even if the defendant is a known drug dealer.” Id. at 384. We noted that the affidavit contained no evidence that the defendant sold or stored drugs in his home, nor did the affidavit indicate that police had surveilled or investigated the home to determine whether it was linked to the drug conspiracy. Id. at 382, 385. In United States v. McPhearson, after police observed the defendant exit his home and arrested him on his front porch for assault, police found crack cocaine in the defendant’s pocket. 469 F.3d 518, 520 (6th Cir. 2006). The affidavit, in relevant part, consisted of a single paragraph describing the incident, stating that the defendant was arrested for a non-drug offense with drugs on his person and that he resided at the address to be searched. Id. at 521, 524. We concluded that this affidavit was “bare bones” and failed to establish the required minimal nexus between the defendant’s home and drug dealing. Id. at 526-27. Even though the police had “indisputable proof that drugs had recently been inside the defendant’s residence,” we nonetheless held that it was not established that drugs and related paraphernalia would be in that same residence absent some additional evidence of drug trafficking there. United States v. Abernathy, 843 F.3d 243, 254 (6th Cir. 2016) (describing MePhearson). We noted in MePhearson that the affidavit did not allege that officers or informants had witnessed any of the hallmarks of drug dealing occurring inside the home, such as heavy traffic to and from the residence. 469 F.3d at 527. Even when an affidavit contains evidence of drug trafficking inside a residence, our precedent rejects the good-faith exception when that evidence consists of only a single drug transaction without any evidence of ongoing drug trafficking. In Hython, we recognized that drug sales occur along a “continuum ranging from an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances, to an organized group operating an established and notorious drug den.” 443 F.3d at 485. We found that a single controlled buy of crack cocaine from inside a residence might indicate no more than criminal activity on the lower end, of that continuum. Id. at 486. Although the confidential informant in Hy-thon provided information suggesting that the seller had been a source of crack cocaine before, id., we held that this evidence was not enough to demonstrate ongoing drug, trafficking that might warrant the good-faith exception, id. at 488-89. Like Brown and McPhearson, Hython noted that the affidavit, lacked any indication of further police surveillance, which might have- substantiated the evidence gathered from the single controlled. buy: “the affidavit includes no observation of deliveries to the address, no monitoring of the frequency,or volume of visitors to the house, no second controlled buy, no further surveillance whatsoever.” Id. at 486; see-also id. at 488-89 (“Any of these things might serve to establish that the house was the site of an ongoing criminal enterprise .... However, without any of these elements, the affidavit is patently insufficient.”). Although the analysis in Hython arose in the context of stajeness, which is not at issue here, the decision shows the limited evidentiary value of a single controlled buy (even from, inside a residence) and provides clear guidance for the type-of police investigation and surveillance that would support the good-faith exception. The majority fails to acknowledge Hython even though it is binding precedent and was included in White’s arguments on appeal. The affidavit in this case is similar .to those found insufficient for the good-faith exception in Brown, McPhearson, and Hy-thon. First, as in Brown and McPhearson, the affidavit here contained no evidence indicating the sale or presence of narcotics inside the residence to be searched. Like the bare bones affidavit in McPhearson, the relevant part of this affidavit contained just one paragraph that largely recited evidence that the defendant engaged in a single drug transaction near but. outside the residence to be searched. According to the affidavit, the officer observed that White was already sitting in a truck in the driveway when the confidential informant pulled in alongside him. The entire transaction took place in the driveway, and then the officer observed White drive away. The affidavit never states .that the officer ob-, served White enter or exit the home, and suggests that- he did not. The affidavit neither alleged nor provided evidence that the informant had ever been inside the residence, let alone that the informant had observed contraband or illegal activity there. Besides the description of'the one controlled buy, the affidavit provides a vague description of the information the police received beforehand, notes White’s criminal history, and states that.he is known to have dogs at his residence. None of these statements clearly relate to- the inside of this residence, let alone; provide any evidence of drugs or criminal activity there. The affidavit states that police “received information that marijuana was being sold from 196 Turner Lane” by White.- No further detail is provided regarding the source, recency, or reliability of that information. Even if we infer that the statement referenced the residence’s interior, this allegation was bare bones except to the extent it was independently, corroborated. See Brooks, 594 F.3d at 493 (“[I]n the absence of any indicia of the informants’ reliability, courts insist that.the affidavit contain substantial independent police corroboration,” (quoting United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005))). The affidavit contains no information regarding the informant’s reliability save the after-the-fact .completion of a controlled buy. That transaction,, however, occurred in the driveway and does not corroborate, ongoing drug activity inside the residence. • The affidavit, moreover, fails to show that the police conducted any independent investigation to corroborate drug activity inside the home at 196 Turner Lane. The majority opinion states five times that the affidavit described “what White kept inside the residence.” Maj. Op. at 500 (emphasis, added); see also id. at. 8, 9, 14, 18. In fact, the affidavit did not describe anything inside the residence. The affidavit stated that White “is also known to have dogs believed to be pit bulls at his residence.” Even if we assume that 196 Turner Lane was White’s residence (which we cannot, as will be shown below), the statement that White may have dogs “at” his residence would not indicate that police had any idea what White kept “inside” it. There was simply no evidence of drug trafficking inside the residence, which is the “critical element in a reasonable search.” Zurcher, 436 U.S. at 556, 98 S.Ct. 1970. The affidavit’s second weakness is that, like the affidavits in Brown, McPhearson, and Hython, it lacks evidence of ongoing drug trafficking. The affidavit provides no evidence to corroborate that White ever sold drugs besides the single observed sale, and the investigation described in the affidavit is almost entirely limited to that incident. The affidavit does note that White’s criminal history includes “numerous possessions of SCH II and VI.” This history, however, is twice removed from evidentiary value: it is both undated and includes only prior possession of drugs, not trafficking. The majority asserts that the affidavit’s reference to this criminal history shows that White’s conduct was ongoing and the observed sale was not an aberration. Maj. Op. at 497-98. Our binding precedent does not support that conclusion. In Brown-, we held that the defendant’s twelve-year-old conviction for conspiracy to distribute marijuana did not impact our conclusion that the good-faith exception did not apply, because it “hardly proves that Brown was dealing drugs at the time of his arrest.” 828 F.3d at 384 n.3; see also id. at 385 (old conviction was not “probative of whether Brown was using his current residence for drug trafficking”). Unless we draw an inference from “unasserted but hypothetically possible facts”—which this court called “unacceptable” in Hython, 443 F.3d at 489—an undated history of drug possession provides no evidence that White was engaged in ongoing drug trafficking preceding the single controlled buy. Evidence of a single controlled buy, without more, might indicate no more than “an individual who effectuates the occasional sale from his or her personal holdings of drugs to known acquaintances.” Id. at 485. While the observation of a drug sale here may suffice to search White’s car, that single sale in a driveway does not by itself demonstrate the kind of ongoing drug trafficking that we have found to authorize a search of that seller’s home. See Brown, 828 F.3d at 384 (“[0]ur cases teach, as a general matter, that if the affidavit.fails to include facts that directly connect the residence with the suspected drug dealing activity ... it cannot be inferred that drugs will be found in the defendant’s home—even if the defendant is a known drug dealer.”). Rather, Brown, McPhearson, and Hython each found that evidence of one drug-related incident was insufficient for the good-fáith exception. Further evidence from police surveillance or investigation, such as deliveries, heavy traffic, or additional controlled buys, is necessary to establish the residence’s connection to ongoing drug trafficking. See Brown, 828 F.3d at 382, 385; McPhearson, 469 F.3d at 527; Hython, 443 F.3d at 486, 488-89. Here, no such further surveillance or investigation is apparent from the affidavit or can be inferred from it.[1] The affidavit’s third gap is that it does not clearly establish White’s connection to 196 Turner Lane. The affidavit never states that the address is White’s home and includes no documentary evidence linking White to the address. The only police surveillance described involved White’s presence on the publicly accessible portion of the property and does not include observing White enter or exit the residence. By contrast, in Brown, the defendant’s car, which tested positive for drugs, was registered to his home, and upon arrest he and his driver’s license corroborated the address. 828 F.3d at 379, 382. In McPhearson, police observed the defendant exiting the home and E-911 records revealed the address to be his residence. 469 F.3d at 521. Given the very limited surveillance and investigation described in this affidavit, it appears that the police failed to establish that 196 Turner Lane was White’s residence before executing the search.[2] The majority claims that the affidavit’s statement that White is “known to have dogs ... at his residence” raises a sufficient inference that the residence was White’s. Though the affidavit states that White is known to have dogs “at his residence,” it does not specify 196 Turner Lane, nor does it aver that those or any dogs were ever seen at 196 Turner Lane. Not only does the “known to have” language suggest that the police heard this information secondhand from some unspecified source, it simply fails to connect the statement to the issue of whether 196 Turner Lane was White’s residence. Nor does it provide any support for an inference that the police determined through investigation that 196 Turner Lane was in fact White’s residence. The three weaknesses described above render the inference that drug contraband is likely to be found inside drug traffickers’ homes impermissible here. The affidavit provides insufficient evidence to establish the required nexus between the residence and White’s alleged drug trafficking, White’s status as an ongoing drug trafficker, or the residence’s status as his home. See Brown, 828 F.3d at 383-84 (inference that evidence of drug trafficking would be found at known drug dealer’s home is permissible only with some additional evidence connecting the known drug dealer’s ongoing criminal activity to the residence). In Brown the defendant was arrested while in a car en route to a heroin delivery, possessed nearly $5,000 in cash when arrested, had a prior conviction for drug distribution, and his car tested positive for narcotics while it was parked at a heroin dealer’s house. We concluded that this evidence was insufficient to establish the defendant’s status as a drug dealer sufficiently to permit a search of his residence. Id. at 384-85 & n.3. The lesser evidence here is similarly insufficient to establish White’s status as an ongoing drug dealer. Furthermore, the district court properly concluded that the inference that drugs will be found in a drug trafficker’s home may not be drawn “when the affidavit does not establish that it is in fact their home.” As in Brown and McPhearson, the affidavit here lacks any evidence of drugs or drug activity inside the residence (the place to be searched). As in Brown, McPhearson, and Hython, the affidavit here lacks any evidence of ongoing drug trafficking beyond a single incident. And significantly, the affidavit here lacks direct evidence that the residence in fact belonged to White, a failure not apparent in any prior case in which this circuit has applied the good-faith exception. Cumulatively, these weaknesses render this affidavit so lacking in indicia of probable cause to search the residence that it fails to meet the requirements for the good-faith exception. The majority references our statement that an affidavit is to be “judged on the adequacy of what it does contain, not on what it lacks.” Maj. Op. at 502 (quoting United States v. Allen, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)). But this statement was made in reference to the probable cause analysis, not the good-faith exception. The good-faith analysis is explicitly based on what is lacking, asking whether the affidavit was “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Leon, 468 U.S. at 923, 104 S.Ct. 3405 (emphasis added). I list the key elements this affidavit lacks for two reasons—because our binding precedent has stated that similar affidavits failed to qualify for the good-faith exception because they lacked these elements and to demonstrate the limited nature of what this affidavit contains. To list each of these flaws is not to divide and conquer, see Maj. Op. at 503-04, but to emphasize how, together, they add up to an affidavit that contains insufficient facts. The affidavit, read in totality and in a common-sense way, states that an officer received information (of uncertain recency or reliability) that White was selling drugs on certain premises, observed a single drug transaction on those premises but outside the residence, learned that White had prior convictions for drug possession, and learned secondhand that White was known to have dogs at his residence. These facts together do not provide an officer with the minimum required under our precedents to believe that drugs are likely to be found inside the residence. Assuming that drugs might be found there is not a common-sense inference from the totality of these facts, but an inference from presumed facts that are simply not present in the affidavit. Such “unasserted but hypothetically possible facts” are “unacceptable.” Hython, 443 F.3d at 489. The totality of limited facts that the affidavit contains do not link the inside of the residence to drug trafficking, precisely because they lack the types of evidence our precedent has stated demonstrates such a link. This conclusion accords with the core purpose of the Fourth Amendment, which is to protect against unreasonable government intrusion into the home. Brown, 828 F.3d at 381 (citing Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and Kyllo v. United States, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001)). It also accords with the purpose of the exclusionary rule, which is designed to prevent that and other Fourth Amendment violations by.deterring unlawful police conduct. United States v. Calandra, 414 U.S. 338, 619-20, 94 S.Ct. 613, 38 L.Ed.2d 661 (1974). Applying the exclusionary rule here is appropriate to deter police from searching the homes of innocent persons based on drug activity that others may engage in on the publicly accessible portions of their property. Cf. Abernathy, 843 F.3d at 254-65 (reasoning that “there is no way of knowing with certainty” whether drugs recovered from a trash pull “came from Defendant’s residence at all”). Furthermore, our precedent had provided clear guidance for the type of simple investigatory steps that might have found probable cause here, such as conducting more than one controlled buy on the premises (or, for even stronger evidence of probable cause, inside the residence), surveilling the property for heavy traffic, observing White enter or exit the residence, or finding basic documentary evidence to establish that the residence belonged to White. See McPhearson, 469 F.3d at 527; Hython, 443 F.3d at 486, 488-89. The majority disagrees. It cites two cases that Leon used as examples of “bare bones” affidavits, which merely stated the author’s beliefs or referenced unsourced and unspecified information without corroboration, then argues that the affidavit here looks nothing like those. See Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933) and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (cited in Maj. Op. at 498-99). Indeed, but the affidavits in Na-thanson and Aguilar do not constitute the spectrum of affidavits that are bare bones. Our precedent does. McPhearson held that its affidavit was bare bones and it described information gathered from direct police observation and investigation (and looked quite similar to the affidavit here). See McPhearson, 469 F.3d at 521, 526. Regardless, the good-faith exception is inappropriate where an affidavit is bare bones or where it is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Hython, 443 F.3d at 484; Leon, 468 U.S. at 923, 104 S.Ct. 3405. Asserting that the affidavit here contains more evidence than those in Nathanson and Aguilar tells us little about whether the good-faith exception is appropriate. The majority also cites a number of cases in which we applied the good-faith exception, but each is distinguishable from the instant case. The majority does not and cannot cite any of our cases in which a single observation of transient drug activity outside of a residence was sufficient to apply the’ good-faith exception to a search of the inside of that residence. The majority asserts that the facts here are “substantially identical” to those in United States v. Jones, in which a confidential informant made at least six controlled buys from the defendant, two. of which occurred in the driveway of the defendant’s home. 159 F.3d 969, 974 (6th Cir. 1998) (cited in Maj. Op. at 500-01). Here, the confidential informant made only one purchase from White; the affidavit contains no evidence to corroborate that White sold drugs more than that one time or that White was even on those premises more than once. The six controlled buys in Jones, two on the premises to be searched, demonstrated that the defendant there was engaged in ongoing drug trafficking, including on those premises. The fact that the residence was the defendant’s home, moreover, was not in question in Jones. In other words, an inference that evidence of drug trafficking would be found in the defendant’s home was permissible from the affidavit in Jones because it .had the exact types of evidence that the affidavit here lacks. The majority cites another set of cases to show that drug trafficking outside a dealer’s home can support an inference that permits a search of the interior of the dealer’s home. Those cases are not analogous to this case for one of the same reasons as Jones: none of those cases contained the issue of whether the residence to be searched was in fact the defendant’s home. See Frazier, 423 F.3d at 532-33 (citing a series of cases holding that “an informant’s observation of drug trafficking outside of the dealer’s home can provide probable cause to search the dealer’s house” (emphasis added)); United States v. Berry, 565 F.3d 332, 339 (6th Cir. 2009) (“observation of drug activity near defendant’s home” (emphasis added)); United States v. Davidson, 936 F.2d 856, 859 (6th Cir. 1991) (“his residence” (emphasis added)). Each of those cases also involved significantly more evidence suggesting the defendant’s ongoing drug dealing than here. See Berry, 565 F.3d at 339 (defendant had prior conviction for drug trafficking, was arrested for violating probation with crack cocaine in his car, and was renting his apartment in violation of his probation under an alias and paying rent in cash); United States v. Miggins, 302 F.3d 384, 388, 393 (6th Cir. 2002) (cited in Frazier, 423 F.3d at 533) (defendant was arrested after signing for a FedEx package containing over one kilogram of cocaine under a false name, admitted to being a gang member, had at least one prior cocaine conviction, and lived with another defendant involved in drug trafficking); United States v. Blair, 214 F.3d 690, 696 (6th Cir. 2000) (cited in Frazier, 423 F.3d at 533) (eleven-page affidavit contained information about the defendants from several reliable witnesses who had worked as prostitutes for the defendants and bought drugs from them, and the defendants owned significant assets despite not filing income returns for years); Davidson, 936 F.2d at 857-58 (defendant was previously convicted of drug trafficking, was a known member of a large drug distribution organization, and was repeatedly observed meeting with other members inside his residence over several months). The other cases cited by the majority are also distinguishable. In United States v. Carpenter, police discovered marijuana fields growing near a residence through helicopter surveillance. 360 F.3d at 593. Police observed two men walking along a beaten path from the fields to the back door of the residence. Id. That kind of permanent connection between the location of the drugs and the residence in Carpenter is hardly analogous to this case, where the drugs were transferred in a driveway between two cars, both of which then drove away. United States v. Smith similarly involved evidence of a marijuana plant growing beside the defendant’s (uncontested) residence, showing a static, ongoing nexus to the place to be searched that is absent in the transient transaction in this case, 783 F.2d 648, 649 (6th Cir. 1986). Put another way, evidence of drug production is not analogous to evidence of a drug sale for purposes of searching a residence. In United States v. Van Shutters, the police had conducted an active, year-long investigation into a series of car thefts and had already arrested the defendant before obtaining the warrant to. search the residence in question. 163 F.3d 331, 334 (6th Cir. 1998). Although the affidavit failed to explain why the affiant believed the property was linked to the defendant, the court found that the affidavit described the residence “with such particularity that a common sense inference is that the affiant visited the premises himself and presumably either observed [the defendant] in the residence, or determined through investigation that [the defendant] frequented the premises.” Id. at 837. That inference may-have been possible there given the length of the investigation and the significantly greater evidence the police had already gathered about that defendant and his crimes. Such an inference is not possible from the affidavit here, which reveals minimal investigation and provides no suggestion that the affiant observed White in the residence or determined that he frequented the premises. The differences between the cases cited by the majority and this case are differences in kind, not just degree. Maj. Op. at 503-04. Most of the cases above involve no question that the residence searched was in fact the defendant’s residence; here there is not just less evidence that 196 Turner Lane was White’s residence, but none. Cases with multiple controlled buys show evidence of ongoing drug trafficking; here, there is not just less evidence of ongoing drug trafficking, there is none. As stated above and emphasized in multiple binding precedents, a single controlled buy does not show ongoing drug trafficking. In sum, because the affidavit did not link drug trafficking to the inside of the residence at 196 Turner Lane, did not establish ongoing drug trafficking beyond the single sale, and did not appropriately link White himself to the residence, the affidavit lacked indicia of probable cause and rendered official belief in such probable cause unreasonable. The good-faith exception to the exclusionary rule does not apply and White’s motion to suppress should have been granted. For these reasons, I respectfully dissent. . The majority suggests that the single controlled buy evidences “hallmarks of drug dealing” being "witnessed at his home,” distinguishing this case from McPhearson, but that makes two mistakes. Maj. Op. at 504-05 (quoting McPhearson, 469 F.3d at 527) McPhearson specifically describes the "hallmarks of drug dealing” as "heavy traffic to and from the residence," which was absent here, not a single controlled buy outside the residence. 469 F.3d at 527. Plus, as explained in the next paragraph, the affidavit did not provide evidence that the observed drug dealing by White occurred at "his home.” Id. . The majority attempts to distinguish Brown by noting that in Brown the affidavit lacked evidence connecting the defendant's drug dealing to his home, while here, according to the majority, the affidavit "states that White sold drugs from the premises of his residence, engaged in peculiar behavior by waiting in his driveway to consummate the deal, and had dogs inside his home.” Maj. Op. at 505. In fact, the affidavit states none of these things, because it never states or provides any evidence that 196 Turner Lane was White’s residence (or that dogs were “inside” it).